### FULLER v. SECURITY UNION INS. CO.
### No. 12385.

Court of Civil Appeals of Texas. Fort Worth.
Feb. 7, 1931.

W. M. Short and H. M. Harrington, both of Fort Worth, for appellant.

John N. Jackson and Julian B. Mastin, both of Dallas, and King, Wood & Morrow, of Houston, for appellee.

DUNKLIN, J.

The Security Union Insurance Company issued five fire insurance policies to different owners of property situated in the city of Fort Worth. These policies were issued to different firms and individuals, and each of them stipulated for insurance for one year from date. Two of those policies bore date February 14, 1928, one February 27, 1928, another March 20, 1928, and another May 19, 1928, and all were for different amounts. Each of those policies recited the payment of premium paid for one year, and each one stipulated that it would expire one year after its date. Each of the policies contained this stipulation:

"This policy shall be cancelled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation. If this policy shall be cancelled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is cancelled by this company by giving notice it shall retain only the pro rata premium."

All of those policies were canceled on October 25, 1928, by the insurance company, acting under the provisions just quoted giving it the right to so cancel.

The firm of Hard & Hard, who were engaged in the insurance business in Fort Worth at the time, issued all of those policies, signing the name of "Security Union Insurance Company, Fort Worth, Texas," and they were duly authorized by the company so to do. At that time W. F. Fuller was likewise engaged in the fire insurance business in the city of Fort Worth and Hard & Hard issued the policies at his request. The parties to whom the policies were issued had applied to him for such insurance, but since he did not represent insurance companies who would issue the policies of the character desired, he procured their issuance through Hard & Hard, according to a custom between such agents when one could not supply his customer with the insurance desired and some other agent represented a company or companies who would issue such insurance. The policyholders paid the premiums recited in the policies to W. F. Fuller, the same being the full amount required to cover the insurance for one year from the respective dates of issuance.

Fuller did not turn over the premiums so collected by him either to Hard & Hard or to the insurance company, but he credited the firm of Hard & Hard therewith on an account between those two agents, according to which account Hard & Hard then owed him a total greater than the amounts of premiums so collected. The amounts so owing to Fuller by Hard & Hard were not for premiums collected on insurance, but were for services rendered by Fuller in appraising property for a mortgage company for which Hard & Hard were also doing business.

After the policies were canceled, Fuller issued to the holders of the same, policies in other companies represented by him and credited the parties taking the same with the amounts of the refunds on the old policies in the way of payment of premiums on the new ones. At the same time he took an assignment of such refunds to him in consideration of credits so given.

This suit was instituted by Fuller to recover of the insurance company the amount of such refunds and he has appealed from a judgment denying him that relief. The case was submitted to a jury on special issues, which, together with the findings thereon, are as follows:

"1. Did a mutual contract exist between plaintiff and Hard & Hard at the time in question, whereby accounts would be debited and credited by them as such accounts accrued?

"Answer: Yes.

"If you answer 'no,' you need not answer further; but if you answer 'yes,' then answer:

"2. Did the plaintiff by such debits and credits pay to Hard & Hard the premiums upon the policies described in plaintiff's petition?

"Answer: Yes.

"3. Did Hard & Hard have authority from Security Union Insurance Company to make the debits and credits, if any, of their mutual accounts with plaintiff?

"Answer: No."

Testimony offered, conclusively proved that neither the defendant company nor the firm of Hard & Hard ever received any part of the premiums paid to Fuller by the policyholders, unless it can be said that the charge made by Fuller against Hard & Hard on the account he kept with them was equivalent to a payment of those premiums in money. It was proven by uncontroverted testimony that a custom prevailed among insurance agents doing business in the city of Fort

Worth for one agent to procure insurance for his clients through an agent representing other insurance companies under certain conditions, the premiums for insurance so procured, in some instances at least, being collected by the first agent. Accounts between the two agents were kept in which each agent was charged and credited with the business done in pursuance of such interagency plan, and at the close of stated periods a balance would be struck and the account settled by payment from one agent to the other of the balance thus shown to be owing.

However, it was a controverted issue under the testimony as to whether that custom related exclusively to premiums collected on insurance policies. The plaintiff's testimony was, in substance, that according to that custom he had the right to charge up against Hard & Hard demands against them growing out of any and all transactions whether arising in the insurance business or not, and therefore the charges made against Hard & Hard for appraisal work done for them in connection with the mortgage business for another company was a proper offset against the amount he owed Hard & Hard for the premiums collected on the policies in question. That testimony of plaintiff was flatly contradicted by that of the witness H. M. Hard, who testified that the custom of accounting between agents was confined solely to premiums collected for insurance, and that there was no custom for one agent to charge another agent on an account kept for interagency insurance with any debits arising from any other character of transaction.

But the findings of the jury in answer to issues Nos. 1 and 2 were, in effect, that the custom was as testified to by Fuller, and according to which he had the right to charge Hard & Hard for the service he had rendered them in appraising property for loans to the same extent as if those debits had arisen from insurance premiums.

The testimony of M. C. Spann, who was the special agent of the defendant company, was that the insurance company did not look to the insured for the premiums but looked only to the agent for the premiums due on policies issued by such an agent, and that defendant charged the premiums credited by plaintiff to Hard & Hard when the policies were issued. That testimony was corroborated by other witnesses, and there was no testimony to the contrary. The proof further showed that the defendant company terminated the agency of Hard & Hard about the time the policies in controversy were canceled, and took from them a promissory note covering all premiums with which they had been charged and had not remitted to the company, which note included the premiums on the policies in controversy, but which note has never yet been paid. J. M. Hard, a member of the firm of Hard & Hard, testified in part as follows:

"At the time this note was executed in the Houston office of the company, there was no understanding or collateral agreement regarding credits on the note. * * *

"Those policies were sent down to the Security Union's office with a sight draft attached; they referred it back to Mr. Fuller and sent us a copy of the letter saying that the settlement would be made in our office. Well, there is where the transaction ended. We never got any further than that. And when that note was given, it included the premiums on those policies, and is still in there today."

Following are excerpts from Cooley's Briefs on Insurance (2d Ed.), which announcements are well supported by authorities there cited:

"So, if an insurance company charges the premium to the agent or broker through whom the policy is obtained, such transaction is equivalent to payment so far as the Company is concerned." Volume 1 (2d Ed.) p. 716.

"In general, the acceptance by an insurer of an insured's note for the first premium will make the contract of insurance binding, even though the policy requires the premium to be paid before the contract shall become effective." Volume 1, p. 719.

"The agreement of an agent of an insurance company to take a note in payment of the premium is binding on the Company (Hughes [Hughs] v. Farmers' Ins. Co., 4 Ohio Dec. 412, 2 Cleve. Law. Rep. 125); and an agent authorized to close the contract of insurance by delivering the policy and collecting premiums has, in general, implied authority to accept notes for the premium." Volume 1, p. 720.

"Ordinarily the company must receive payment in lawful money to be bound; but if the company accepts a draft given by the insured on a third person, and receipts therefor, this will constitute payment (Texas Mut. Life Ins. Co. v. Munson, 2 Posey, Unrep. Cas. [Tex.] 649). So too, the note of a third person is payment, when the company accepts it in lieu of cash as premium payment (State Life Ins. Co. v. Little [Tex. Civ. App.] 264 S. W. 319). * * * Premiums need not necessarily be paid in cash or its equivalent. They may be paid in services. Thus a company may agree to take advertising in payment for a premium, and if a company does so agree it must furnish the advertising matter. A failure to do so cannot affect the rights of the insured. (Kentucky Mut. Ins. Co. v. Jenks, 5 Ind. 96.)" Volume 2, p. 1635.

"So an agreement made in good faith between an insurance agent, having authority to receive a premium, and the insured, that

the agent shall become personally responsible to his principals for the amount of. such premium, and the insured his personal debtor therefor, constitutes a payment of the premium as between the insured and the insurance company (Bouton v. American Mut. Life Ins. Co., 25 Conn. 542). And it is not necessary that the agreement be express. It may be based on a custom. Thus if an agent charges an insured with a premium when due, and credits the company with the payment to himself of such premium, intending to call upon the insured for the money when he needs it, as customary, this will constitute a payment by the agent for the insured, so that there can be no forfeiture for nonpayment." Volume 4, pp. 3642, 3643.

■ The findings of the jury in answer to issues Nos. 1 and 2 cannot be disturbed for lack of sufficient evidence to support them, and the facts so found must be accepted by this court as true. By reason of those facts, in connection with the further facts that the defendant company did not look to the holders of the canceled policies for the payment of the premiums for the first year, but charged the same against their agents, Hard & Hard, who represented the company, and, later, took from Hard & Hard their promissory note covering those premiums, it cannot be denied that the contracts of insurance by the defendant company with the holders of those policies were valid and binding. Those policies expressly stipulated for payment by the defendant company to the policyholders of the unearned premiums in the event of cancellation of the policies. There were no pleadings on the part of defendants presenting the issue of fraud, accident, or mistake, nor of any special equities which would constitute a defense as against plaintiff's suit; nor could there be any such equities arising from any of the facts shown in the record.

■ It follows, therefore, that the plaintiff, as assignee of the policyholders, acquired the same rights to a return by the insurance company of the unearned premiums as was possessed by his assignors.

■ Furthermore, the absence of any authority from the defendant to Hard & Hard to make the debits and credits of their mutual accounts with plaintiff, as found by the jury in answer to issue No. 3, could not have the effect to defeat a recovery in this case, since by reason of the facts recited above, the defendant company was bound to return to plaintiff the unearned premiums, independently of the fact so found by the jury in answer to issue No. 3.

Accordingly, the judgment of the trial court is reversed and judgment is here rendered in favor of plaintiff for the sum of $365.50, the

same being aggregate of the unearned premiums due the holders of the canceled policies at the time of their cancellation, as shown by undisputed proof appearing in the record, together with 6 per cent. interest thereon from October 25, 1928, the date of such cancellations up to the date of this judgment. It is to be noted that Hard & Hard were not made parties to this suit, therefore any equities as between them and the plaintiff, or between them and the defendant, are not involved in any of the issues presented here.