SOUTHERN COUNTY MUTUAL
INSURANCE, Appellant,

v.

SURETY BANK N.A. Individually
and d/b/a Surety Premium
Finance, Appellee.

No. 2–05–121–CV.

Court of Appeals of Texas,
Fort Worth.

Feb. 16, 2006.

Wilson, Elser, Moskowitz, Edelman & Dicker LLP and Lee L. Cameron, Dallas, for appellant.

Chappell Hill, L.L.P., Marcus C. Marsden, Jr., and David F. Chappell, Fort Worth, for appellee.

Panel A: CAYCE, C.J.; HOLMAN and McCOY, JJ.

## OPINION

BOB McCOY, Justice.

### I.  Introduction

Appellant Southern County Mutual Insurance appeals the trial court's grant of summary judgment to appellee Surety Bank N.A., a lender that provides financing for purchasers of insurance to pay premiums owed on insurance policies. The parties' dispute centers around Southern County's alleged duty to refund premiums to Surety Bank after the financed insurance policy was cancelled.  Because a fact issue exists regarding any duty on the part of Southern County to refund the entire amount of the unearned premiums directly to Surety Bank, we reverse and remand.

### II.  Factual Background

In March 2001, Scotts Temple, a church in Houston, Texas, was shopping for automobile insurance.  Scotts Temple contacted its insurance agent, United National Insurance Agency, who in turn contacted U.S. Risk Underwriters, Inc., an agent for Southern County.  Southern County agreed to issue an insurance policy to Scotts Temple, and the coverage was bound as of March 29, 2001.  The total premium charged by Southern County for the policy was $45,999.

To pay this premium, Scotts Temple sought financing from appellee Surety Bank.  On April 6, 2001, Scotts Temple and United National signed Surety's Premium Finance Agreement ("PFA").  The PFA required a cash down payment of $11,706, so the amount actually financed by Surety Bank was $34,293.  Surety Bank issued a check for $34,293 to Southern County's agent, U.S. Risk, on April 13, 2001.

The terms of the PFA show that the $11,706 down payment was supposed to be paid by Scotts Temple; however, Scotts Temple never paid it.  Under U.S. Risk's agency contract with Southern County, U.S. Risk was required to forward the full amount of the premium due on each policy it sold for Southern County, regardless of whether U.S. Risk was actually able to collect the full amount from the insured. The PFA provided financing for only $34,293 of the $45,999 premium, leaving an unpaid balance of $11,706—the down payment that Scotts Temple never paid. Therefore, U.S. Risk paid Southern County the balance due, $11,706, out of its own pocket.

According to Surety Bank, Scotts Temple continued its history of nonpayment by failing to remit any installments due under the PFA;  therefore, the insurance policy

was cancelled in May 2001—less than two months after it had taken effect. Southern Country subsequently returned to U.S. Risk unearned premiums in the amount of $31,721.70, which represented the portion of the policy premium that was paid in advance but not used because the insurance was cancelled before the end of the policy period. U.S. Risk then added its unearned commission, $3,094.80, and deducted $7,133.60, claiming that this amount was its pro rata share of the portion of the premium that it had paid out of its own pocket when Scotts Temple failed to make the down payment. U.S. Risk then sent the remaining balance, $27,682.90, to Surety Bank.[1]

Surety Bank sued, contending that Southern County failed to refund the unearned premiums as required by the PFA and Texas law.[2] Surety Bank moved for summary judgment against Southern County, arguing that (1) both the PFA and the Texas Insurance Code granted it a security interest in all unearned premiums and (2) Southern County was bound under the PFA through theories of agency and ratification.

According to Southern County's discovery responses, the total unearned portion of the original $45,999 premium was $38,685. However, United National and U.S. Risk had received commissions on the sale of the insurance policy amounting to eighteen percent of the $45,999 gross premium. Therefore, Southern County returned eighty-two percent of the total unearned premiums and expected the agents

to return the remaining eighteen percent, which represented their unearned commissions on the unearned premiums.

However, Surety Bank asserted that Southern County owed it the total unearned premiums, $38,685—an amount that included the down payment paid by U.S. Risk as well as the agents' unearned commissions. Because Surety Bank had already received $27,682.90 in unearned premiums from U.S. Risk, it asked the court to award it the difference—$11,002— as well as its attorney's fees. The trial court so ordered when it granted Surety Bank's motion and signed a final judgment against Southern County on March 1, 2005. Southern County now appeals.

## III. Discussion

In its third issue, Southern County argues that Surety Bank failed to show the absence of a fact issue with regard to its breach of contract claim. Southern County asserts that Surety Bank is not entitled to the entire amount of the unearned premiums because neither Surety Bank nor its borrower, Scotts Temple, ever paid the down payment; accordingly, Surety Bank cannot receive a windfall and recover money that it never paid out. Surety Bank responds that the PFA and Texas law require Southern County to return the entire amount of the unearned premiums due under the insurance policy to Surety Bank, regardless of whether another party originally paid part of the premium.

In a summary judgment case, the issue on appeal is whether the movant met the

1. In the PFA, Scotts Temple assigned to Surety Bank its right to receive payment of "any and all unearned premiums and dividends which become payable under [the insurance policy]," gave Surety Bank a security interest in these unearned premiums, and appointed Surety Bank as its attorney-in-fact "with full authority upon any default to cancel [the poli-

cy] . . . and receive all sums resulting therefrom."

2. Surety Bank originally sued Scotts Temple and United National along with Southern County and U.S. Risk. United National was severed from the case, and Surety Bank nonsuited all remaining defendants but Southern County.

summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Sw. Elec. Power Co.,* 73 S.W.3d at 215. The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *Clear Creek Basin,* 589 S.W.2d at 678.

■ As Surety Bank pointed out in the trial court and now on appeal, chapter 24 of the Texas Insurance Code was designed to regulate and protect the premium finance industry.³ TEX. INS.CODE ANN. arts. 24.01–24.22; *Serv. Fin. v. Adriatic Ins. Co.,* 46 S.W.3d 436, 447 (Tex.App.-Waco 2001), *judgm't vacated w.r.m.,* 51 S.W.3d 450 (Tex.App.-Waco 2001, no pet.). For example, when an insured fails to make payments under a premium finance agreement, article 24.17 authorizes the premium finance lender to cancel the insurance contract and receive the unearned premiums due under the contract. TEX. INS.CODE ANN. art. 24.17(d), (f). Chapter 24 of the insurance code contains criminal and administrative penalties for violations of its provisions. *See id.* art. 24.08. It does not, however, create a private right of action for its enforcement. *See Brown v. De La Cruz,* 156 S.W.3d 560, 567 (Tex.2004). Accordingly, any cause of action by a premi-

um finance lender to recover the unearned premiums must sound in contract. *See id.; Serv. Fin.,* 46 S.W.3d at 448.

■ Insurance contracts are subject to the same rules of construction as ordinary contracts. *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 823 (Tex. 1997). To prevail on a breach of contract claim seeking a refund of unearned premiums, a premium finance company must establish that (1) the insurance policy provides for a refund of unearned premiums upon cancellation, (2) the premium finance company has authority to collect the refund, (3) the premium finance company gave timely notice of the financing agreement, (4) the insured defaulted on the premium finance agreement, (5) the premium finance company gave notice of the insured's default and requested cancellation of the policy, and (6) the insurer failed to make the proper refund. *Serv. Fin.,* 46 S.W.3d at 449.

■ The parties' dispute centers around the sixth requirement: proof that the insurer failed to make the proper refund. Specifically, the parties disagree on what comprises the unearned premiums to be returned. Surety Bank argues that it possessed a security interest in every penny of premium that had not yet been earned by Southern County as of the policy cancellation date, regardless of the money's source. But because Scotts Temple assigned Surety Bank the right to receive "any and all unearned premiums ... which become payable under [the insurance policy]," Surety Bank stands in the shoes of Scotts Temple and may assert only those rights under the insurance policy that Scotts Temple itself could assert. *See*

---

**3.** Chapter 24 of the Texas Insurance Code was in effect at the time the PFA in this case was signed, but it has since been recodified. *See* Act of May 25, 1979, 66th Leg., R.S., ch. 825, § 1, 1979 Tex. Gen. Laws 2149, 2149–58 (repealed 2003) (current version at TEX. INS. CODE ANN. §§ 651.001–.209 (Vernon 2005)). For clarity, all subsequent citations will be to the former section numbers.

*Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 420 (Tex.2000). Accordingly, we must determine what part of the unearned premiums became payable to Scotts Temple upon the policy's cancellation. It is this part, and this part only, to which Surety Bank is entitled under the terms of the PFA. *See id.; see also* TEX. INS.CODE ANN. art. 24.17(f) (providing that, upon cancellation, "the insurer shall return whatever unearned premiums are due under the insurance contract").

■ We cannot make this determination, however, because the summary judgment record does not contain the insurance policy or any other proof establishing the terms of the policy relating to the return of unearned premiums. Although a plaintiff who was not a party to the original insurance contract need not introduce the entire policy in evidence, it must in some way prove those terms of the policy that allow its recovery. *See Paragon Sales Co. v. N.H. Ins. Co.*, 774 S.W.2d 659, 661 (Tex.1989). In its responses to Surety Bank's discovery requests, Southern County admitted the following:

- All of the insurance policies issued by Defendant Southern County Mutual Insurance which are the subject of this litigation provided for the refund of unearned premiums, commissions and taxes to be calculated pursuant to the provisions of the policy.
- The insurance policies financed by Plaintiff Surety that are the subject of this litigation provide for a refund of unearned premium upon cancellation.

Beyond these admissions, the record contains no evidence of the policy's terms regarding return of the unearned premiums. Therefore, the record reveals only that Southern County was required to

make the refund; it does not reveal that Southern County was required to return to Scotts Temple amounts paid by other parties (such as the down payment fronted by U.S. Risk), rather than to the parties who made those payments. Accordingly, a fact issue exists as to whether Southern County breached the insurance contract. Because the record does not establish that no genuine issue of material fact exists and that Surety Bank conclusively proved all essential elements of its cause of action, Surety Bank was not entitled to summary judgment. *See* TEX.R. CIV. P. 166a(c); *Sw. Elec. Power Co.*, 73 S.W.3d at 215; *Clear Creek Basin*, 589 S.W.2d at 678. We sustain Southern County's third issue.[4]

## IV. Conclusion

Having sustained Southern County's third issue, we hold that the trial court erred in granting summary judgment in favor of Surety Bank. We reverse the judgment and remand this cause to the trial court.

---

4. Because of our disposition of Southern County's third issue on appeal, we need not reach its remaining issues. *See* TEX.R.APP. P. 47.1.