COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.
2-07-185-CV

 

 

SOUTHERN
COUNTY MUTUAL INSURANCE                            APPELLANT

 

                                                      V.

 

SURETY
BANK, N.A., INDIVIDUALLY                                         APPELLEE

AND D/B/A SURETY PREMIUM
FINANCE

 

                                                  ------------

 

           FROM COUNTY COURT AT
LAW NO. 1 OF TARRANT COUNTY

 

                                                  ------------

 

                                                OPINION

 

                                                  ------------








This is the second time we have considered this
unearned premium refund case.  After this
court reversed a summary judgment for appellee Surety Bank, N.A., individually
and d/b/a Surety Premium Finance (ASurety
Bank@) in the
first appeal,[1]
the trial court, on remand, again granted summary judgment for Surety
Bank.  Appellant Southern County Mutual
Insurance (ASouthern County@) again
appeals, asserting that Surety Bank received all the refund it was entitled
to.  We affirm. 

Background

In our earlier opinion, we provided a
comprehensive statement of the relevant facts.[2]  We repeat here only those facts pertinent to
our review in this appeal.

In March 2001, Scotts Temple, a church in Houston,
obtained an automobile insurance policy (the APolicy@)
through its agent, United National Insurance Agency (AUnited
National@), from
insurer Southern County.  United National
did not deal directly with Southern County, but obtained the policy through
Southern County=s managing agent, U.S. Risk
Underwriters, Inc. (AU.S. Risk@).  Coverage was bound on March 29, 2001, and the
total gross premium for the Policy was $45,999. 








On April 6, 2001, Surety Bank entered into a
premium finance agreement (APFA@) with
Scotts Temple and United National, under which Surety Bank would finance
$34,293, a portion of the total premium, while Scotts Temple was obligated to
pay the rest of the premium, $11,706, by down payment.  In the PFA, Scotts Temple and United National
expressly warranted that this down payment had already been made by Scotts
Temple.  Scotts Temple, however, did not
make the down payment.  U.S. Risk did.[3]

Through the PFA, Scotts Temple assigned to Surety
Bank Aas
security for the total amounts payable [under the PFA] any and all unearned
premiums and dividends which may become payable under the [Policy].@  Also through the PFA, Scotts Temple appointed
Surety Bank its Aattorney-in-fact . . . with full
authority upon any default to cancel [the Policy] . . . and receive all sums
resulting therefrom.@

On April 13, 2001, Surety Bank issued a check for
$34,293 to U.S. Risk.  That same day,
Surety Bank sent Southern County a notice of financed premium.  Southern County acknowledges receiving this
notice. 








Scotts Temple did not pay any installments due to
Surety Bank under the PFA.[4]  Pursuant to the PFA, on May 4, 2001, Surety
Bank provided Scotts Temple notice of its intent to cancel the Policy, and on
May 15, 2001 canceled the Policy, less than two months after it had taken
effect.  Surety Bank sent a notice of
cancellation to Southern County, placing Southern County on notice that
unearned premiums must be returned to Surety Bank within sixty days of the date
of cancellation.

Instead of sending the total unearned premiums,
which amounted to $38,685, to Surety Bank, Southern County sent $31,721.70,
which represented the unearned premiums minus the unearned commissions of U.S.
Risk and United National, to U.S. Risk.[5]  U.S. Risk added $3,094.80, its unearned
commission at the time of cancellation, to the amount Southern County had sent
U.S. Risk, then took out for itself $7,133.60, claiming that this amount was its
pro rata share of the portion of unearned premium it paid when Scotts Temple
failed to make the down payment.  U.S.
Risk then sent the remaining balance, $27,682.90, to Surety Bank.








Surety Bank sued Southern County[6]
to recover the difference between the total unearned premiums and the amount it
received from U.S. Risk, claiming that under Texas law and the terms of the
Policy and the PFA, it was entitled to receive the total amount of unearned
premiums.  Surety Bank moved for summary
judgment, which the trial court granted. 
Southern County appealed.

In February 2006, we reversed the summary
judgment and remanded the case to the trial court, holding that, because the
summary judgment record did not contain the Policy or any other evidence
establishing the terms of the Policy regarding the return of unearned premiums,
a fact issue existed concerning whether Southern County had breached the
Policy.[7]  We reasoned that, without the Policy, neither
this court nor the trial court could determine what part of the unearned
premiums became payable to Scotts Temple upon the Policy=s
cancellation.[8]

On remand, both parties filed motions for summary
judgment.  This time, a copy of the
Policy was part of the summary judgment evidence.  Paragraph A(5) of the ACommon
Policy Conditions@ form states what Southern
County=s
obligations are regarding unearned premiums if the Policy is cancelled:

A.     CANCELLATION
AND RENEWAL

 








5.      If
this policy is cancelled, [Southern County] will send the first Named Insured
any premium refund due.  The refund will
be pro rata subject to the policy minimum premium.  The cancellation will be effective even if
[Southern County] ha[s] not made or offered a refund. 

. . .

 

E.      PREMIUMS

 

The first Named Insured shown in the Declarations:

. . .


 

2.      Will
be the payee for any return premiums [Southern County] pay[s]. 

 

It is undisputed that the Afirst
Named Insured@ is Scotts Temple. 

On May 25, 2007, the trial court denied Southern
County=s motion
for summary judgment and granted summary judgment for Surety Bank.  The judgment awarded Surety Bank $11,002, the
difference between the total unearned premiums ($38,685) and the amount Surety
Bank received from U.S. Risk ($27,682.90). 
The judgment also awarded Surety Bank pre- and post-judgment interest
and $62,000 in attorney=s fees.  This second appeal followed.

Standard of Review








A plaintiff is entitled to summary judgment on a
cause of action if it conclusively proves all essential elements of the claim.[9]  When reviewing a summary judgment, we take as
true all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s favor.[10]

When both parties move for summary judgment and
the trial court grants one motion and denies the other, the reviewing court
should review both parties= summary
judgment evidence and determine all questions presented.[11]  The reviewing court should render the
judgment that the trial court should have rendered.[12]


Analysis








As in the first appeal, the parties= dispute
centers on whether Southern County made a proper refund of unearned
premiums.  In one issue, Southern County
argues that it was not required to refund to Surety Bank the down payment
portion of the unearned premiums because Scotts Temple never paid the down
payment.  Surety Bank, on the other hand,
asserts that Southern County was obligated under the Policy, the PFA, and
applicable statutes and regulations to send all unearned premiums to Surety
Bank and that Southern County breached its contract (the Policy) by instead
sending the unearned premiums to U.S. Risk. 

Interpretation of insurance contracts in Texas is
governed by the same rules of construction as other contracts.[13]  When construing a contract, the court=s
primary concern is to give effect to the written expression of the parties= intent.[14]  This court is bound to read all parts of a
contract together to ascertain the agreement of the parties.[15]  Terms used in the policy will be given their
plain, ordinary, and generally accepted meanings, unless it appears from the
policy itself or by usage that the parties intended to use the words in a
special or technical sense.[16]








Under the PFA, Scotts Temple assigned to Surety
Bank and gave Surety Bank a security interest in Scotts Temple=s right
to receive Aany and all unearned premiums .
. . which may become payable under [the Policy].@  We concluded in the first appeal that this
meant Surety Bank Astood in the shoes@ of
Scotts Temple for purposes of Surety Bank=s
entitlement to receive unearned premiums.[17]  In other words, whatever Scotts Temple, in
the absence of the PFA, would have been entitled to, Surety Bank was now
entitled to.

The unresolved question on remand was Awhat
part of the unearned premium became payable to Scotts Temple upon the Policy=s
cancellation.@[18]  Because the Policy was not part of the
summary judgment record in the first appeal, we could not determine the answer
to this question.  Now, we can.

The Policy provides that upon cancellation,
Southern County Awill send the first Named
Insured any premium refund due.@  The Policy further provides that the Afirst
Named Insured . . . [w]ill be the payee for any return premiums we pay.@  The Afirst
Named Insured@ is Scotts Temple.  This language is clear and unambiguous: if
the Policy is cancelled, Southern County is obligated to return unearned
premiums to Scotts Temple.








But this does not end the inquiry.  Southern County asserts that Scotts Temple
cannot receive a Arefund@ for
premiums that it did not pay.  This
means, according to Southern County, that Surety Bank cannot complain about not
receiving all unearned premiums, since it can only recover to the extent
Scotts Temple could recover, and Scotts Temple cannot receive a Arefund@ for the
down payment it never made.  We reject
this argument.








First, Southern County=s
position would prove too much.  It is
true that, ordinarily, to Arefund@ is to Apay
back,@ which
implies that the refund should go to the one who paid.[19]  But Arefund@ does
not have such a cribbed meaning in this context.[20]  If Southern County=s
proposed construction of Arefund@ were
correct, that is, if Scotts Temple was not entitled to a Arefund@ of the down
payment because it did not make that down payment, then Scotts Temple
likewise would not be entitled to a refund of the amount financed by Surety
Bank, since Scotts Temple did not pay that amount either.

Such a result would render meaningless premium
finance agreements in which the premium finance provider secures its interest
through an assignment of and security interest in refunded unearned premiums, a
result clearly contrary to Texas public policy as expressed through the
statutes and regulations discussed below.[21]  We will not construe contracts to produce an
absurd result when a reasonable alternative construction exists.[22]








A previous decision of this court, in which we
considered the effect on a claim for a refund of unearned premiums where an
insurance agent had paid some of the premiums on behalf of the insured, informs
our construction of the term Arefund@ in this
context.  In Fuller v. Security Union
Ins. Co.,[23]
we recognized that, no matter who makes the payment, any payment of
premiums to the insurer Aconstitutes a payment of the
premium as between the insured and the insurance company.@[24]

The insurance policies at issue in Fuller,
like the Policy in this case, Aexpressly
stipulated for payment by the [insurer] to the policyholders of the unearned
premiums in the event of cancellation of the policies.@[25]  Accordingly, we held that the assignee of an
insured=s right
to recover unearned premiums was entitled to recover from the insurer unearned
premiums that had been paid by an insurance agent for the insured.[26]  We see no reason to construe the
refund-of-unearned-premium provisions in the Policy in this case any
differently than we construed similar policy provisions in Fuller.








Second, Southern County=s
position is contrary to the statutory and regulatory scheme established by the
State of Texas for premium finance agreements. 
As we noted in the first appeal of this case, premium finance companies
and arrangements are governed by the provisions of former Chapter 24 of the
Texas Insurance Code.[27]  Former article 24.22 of the insurance code
requires each premium finance company, upon entering into a premium finance
agreement that contains a power of attorney or an assignment, to notify the
insurer of the existence of the agreement and to whom the premium payment was
made.[28]  Under former article 24.17, if a premium
finance company has timely provided such notice, the insurer Ashall
return whatever unearned premiums are due under the insurance contract directly
to the premium finance company within 60 days after the policy cancellation
date.@[29]

Regulations promulgated by the Texas Department
of Insurance reinforce this statutory requirement and provide further
indication that the insurer=s
obligation is to send all unearned premiums directly to the premium finance
company.  These regulations specify that








[i]f the insurance
premium finance company notified the insurer of the existence of the premium
finance agreement pursuant to the Insurance Code, Article 24.22, then the
entire unearned premium owed the insurance premium finance company (in trust
for the insured) shall be paid within 60 days from the date notice of
cancellation was received.[30]

 

In the first appeal of this case, we identified
the elements Surety Bank was required to prove in order to recover on its claim
against Southern County for failure to properly refund unearned premiums under
the Policy:

To prevail on a breach of
contract claim seeking a refund of unearned premiums, a premium finance company
must establish that (1) the insurance policy provides for a refund of unearned
premiums upon cancellation, (2) the premium finance company has authority to
collect the refund, (3) the premium finance company gave timely notice of the
financing agreement, (4) the insured defaulted on the premium finance
agreement, (5) the premium finance company gave notice of the insured=s default and requested
cancellation of the policy, and (6) the insurer failed to make the proper
refund.[31]

 








Surety Bank conclusively established every
element of its claim.  Surety Bank
established that the Policy provides for a refund of unearned premiums to
Scotts Temple upon cancellation.  Surety
Bank timely notified Southern County of the existence of the PFA, which
authorized Surety Bank to collect any and all premium refunds due to Scotts
Temple under the Policy.  Surety Bank
notified Southern County that Scotts Temple defaulted and that the Policy was
cancelled effective May 15, 2001. 
Therefore, within sixty days from May 15, 2001, Southern County was
obligated to send all unearned premiums under the Policy to Surety Bank.  Southern County did not do so.  Therefore, Southern County failed to make a
proper refund.  Accordingly, the trial
court did not err in granting summary judgment for Surety Bank.[32]

Conclusion

Having overruled Southern County=s only
issue on appeal, we affirm the trial court=s
judgment.  

 

 

JOHN
CAYCE

CHIEF
JUSTICE

 

PANEL:  CAYCE, C.J.; HOLMAN and MCCOY, JJ.

 

DELIVERED:  October 23, 2008











[1]S. County Mut. Ins. Co.
v. Surety Bank N.A., 187 S.W.3d 178 (Tex. App.CFort Worth 2006, no pet.).





[2]Id. at 179B80.





[3]As noted in our earlier
opinion, U.S. Risk=s agency contract with
Southern County obligated U.S. Risk to forward the full amount of premium due
on each policy regardless of whether U.S. Risk received full payment from the
insured.  Id. at 179. 





[4]Scotts Temple attempted
to make two payments to Surety Bank, but both were returned for insufficient
funds.





[5]The gross total premiums
of $45,999 included amounts to be paid to U.S. Risk and United National as
commissions.  Southern County deducted
the unearned portions of the agents= commissions at the time of cancellation from the
amount of total unearned premiums it sent to U.S. Risk upon cancellation.





[6]Surety Bank also sued
Scotts Temple, United National, and U.S. Risk. 
United National was severed from the case, and Surety Bank nonsuited all
remaining defendants but Southern County. 
[Op. 180 n.2]





[7]See id. at 182.





[8]See id.





[9]See Tex. R. Civ. P. 166a(a),
(c); MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986).





[10]IHS Cedars Treatment Ctr.
of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004).





[11]Valence Operating Co. v.
Dorsett,
164 S.W.3d 656, 661 (Tex. 2005).





[12]Id.





[13]Upshaw v. Trinity Cos., 842 S.W.2d 631, 633 (Tex.
1992); W. Reserve Life Ins. Co. v. Meadows, 152 Tex. 559, 261 S.W.2d
554, 557 (1953) cert. denied, 347 U.S. 928, 74 S. Ct. 531 (1954).





[14]Ideal Lease Serv., Inc.
v. Amoco Prod. Co., 662 S.W.2d 951, 953 (Tex. 1983); R & P Enters. v. LaGuarta,
Gavrel & Kirk, Inc., 596 S.W.2d 517, 518 (Tex. 1980).





[15]See Royal Indem. Co. v.
Marshall,
388 S.W.2d 176, 180 (Tex. 1965); Pan Am. Life Ins. Co. v. Andrews, 161
Tex. 391, 340 S.W.2d 787, 790 (1960).





[16]Ramsay v. Md. Am. Gen.
Ins. Co., 533
S.W.2d 344, 346 (Tex. 1976).





[17]S. County Mut. Ins., 187 S.W.3d at 181
(citing Gulf Ins. Co. v. Burns Motors, Inc., 22 S.W.3d 417, 420 (Tex.
2000)).





[18]Id. at 182.





[19]See Daniel v. Richcreek, 118 S.W.2d 935, 937
(Tex. Civ. App.CAustin 1938, no writ) (AOrdinarily, >refund= means to pay back, thus
implying that the payment is to be made to the party from whom received.@); see also State v.
U.S. Fid. & Guar. Co., 193 F.2d 47, 50 (7th Cir. 1951) (AThe word >refund= is defined, >To pay back by the party
who has received it, to the party who has paid it, money which ought not to
have been paid.=@); Foss v. Halloran
& Narr, Inc., 203 N.Y.S.2d 607, 615 (N.Y. Sup. Ct. 1960) (AIn Black's Law Dictionary
the word >refund= is defined as >to repay or restore; to
return money had by one party of another.=@).





[20]See Daniel, 118 S.W.2d at 937
(noting that Acontextually, the
prescribed >refund= meant to the party
legally entitled to demand and receive it from the [party holding the funds],@ not to the entity that
literally Apaid@ the money to that
party); see also Wash. Urban League v. FERC, 886 F.2d 1381, 1386 (3rd
Cir. 1989) (explaining that in some instances, A[t]he fact that the party
receiving the >refund= never actually overpaid
the amounts in the refunds to the refunding party should not preclude the use
of the word >refund= to describe [a]
transaction@).





[21]See Serv. Fin. v.
Adriatic Ins. Co., 46 S.W.3d 436, 447 (Tex. App.CWaco 2001) (A[C]hapter 24 of the Insurance Code clearly
evinces an intent on the part of the Legislature to regulate and protect the
premium finance industry.@), judgm=t  vacated w.r.m., 51 S.W.3d 450 (Tex.
App.CWaco 2001, no pet.).  We note in this regard that U.S. Risk would
have been in the same position as Surety Bank if U.S. Risk, when it Afronted@ the down payment for
Scotts Temple, had required Scotts Temple to sign a premium finance agreement
like Surety Bank did.  But U.S. Risk did
not do so.





[22]See, e.g., Ill. Tool Works,
Inc. v. Harris, 194 S.W.3d 529, 533 (Tex. App.CHouston [14th Dist.]
2006, no pet.).





[23]37 S.W.2d 235 (Tex. Civ.
App.CFort Worth 1931, no
writ).





[24]Id. at 237B38.





[25]Id. at 238.





[26]Id.





[27]S. County Mut. Ins., 187 S.W.3d at 181 &
n.3.  As we noted in the first appeal,
chapter 24 of the Insurance Code was in effect at the time the PFA in this case
was signed, but it has since been recodified. 
See Act of May 25, 1979, 66th Leg., R.S., ch. 825, ' 1, 1979 Tex. Gen. Laws
2149, 2149B58 (repealed 2003) (current
version at Tex. Ins. Code Ann. '' 651.001B.209 (Vernon 2005 & Supp. 2008)).  For clarity, all citations are to the former
section numbers.





[28]Tex. Ins. Code art. 24.22
(Vernon Supp. 2004).





[29]Id. art 24.17(f) (emphasis
added); see also Serv. Fin., 46 S.W.3d at 448 (A[A]rticle 24.17 defines
the rights and obligations of the parties to an insurance transaction in which
the premiums have been financed and the insured subsequently defaults on the
finance agreement.@).





[30]28 Tex. Admin. Code ' 25.10(a) (2007)
(emphasis added).





[31]S. County Mut. Ins., 187 S.W.3d at 181
(citing Serv. Fin., 46 S.W.3d at 449); see also INAC Corp. v.
Underwriters at Lloyd=s, 56 S.W.3d 242, 253 (Tex. App.CHouston [14th Dist.]
2001, no pet.).





[32]We note that, under the
trial court=s judgment, Surety Bank
will recover more than its secured interest in the refund due Scotts
Temple.  The regulations account for what
is to happen in such circumstances: AThe insurance premium finance company shall
return any monies due to the insured within 20 days from the date returned
unearned premiums are received from the insurer or agent.@  28 Tex. Admin. Code ' 25.10(c) (2007).