

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-185-CV

SOUTHERN COUNTY MUTUAL INSURANCE                    APPELLANT

V.

SURETY BANK, N.A., INDIVIDUALLY                    APPELLEE
AND D/B/A SURETY PREMIUM FINANCE

------------

FROM COUNTY COURT AT LAW NO. 1 OF TARRANT COUNTY

------------

## OPINION

------------

This is the second time we have considered this unearned premium refund case.  After this court reversed a summary judgment for appellee Surety Bank, N.A., individually and d/b/a Surety Premium Finance ("Surety Bank") in the first appeal,[1] the trial court, on remand, again granted summary judgment for Surety

---

[1] *S. County Mut. Ins. Co. v. Surety Bank N.A.*, 187 S.W.3d 178 (Tex. App.—Fort Worth 2006, no pet.).

Bank. Appellant Southern County Mutual Insurance ("Southern County") again appeals, asserting that Surety Bank received all the refund it was entitled to. We affirm.

## Background

In our earlier opinion, we provided a comprehensive statement of the relevant facts.[2] We repeat here only those facts pertinent to our review in this appeal.

In March 2001, Scotts Temple, a church in Houston, obtained an automobile insurance policy (the "Policy") through its agent, United National Insurance Agency ("United National"), from insurer Southern County. United National did not deal directly with Southern County, but obtained the policy through Southern County's managing agent, U.S. Risk Underwriters, Inc. ("U.S. Risk"). Coverage was bound on March 29, 2001, and the total gross premium for the Policy was $45,999.

On April 6, 2001, Surety Bank entered into a premium finance agreement ("PFA") with Scotts Temple and United National, under which Surety Bank would finance $34,293, a portion of the total premium, while Scotts Temple was obligated to pay the rest of the premium, $11,706, by down payment. In

_____

[2] *Id.* at 179–80.

2

the PFA, Scotts Temple and United National expressly warranted that this down payment had already been made by Scotts Temple. Scotts Temple, however, did not make the down payment. U.S. Risk did.[3]

Through the PFA, Scotts Temple assigned to Surety Bank "as security for the total amounts payable [under the PFA] any and all unearned premiums and dividends which may become payable under the [Policy]." Also through the PFA, Scotts Temple appointed Surety Bank its "attorney-in-fact . . . with full authority upon any default to cancel [the Policy] . . . and receive all sums resulting therefrom."

On April 13, 2001, Surety Bank issued a check for $34,293 to U.S. Risk. That same day, Surety Bank sent Southern County a notice of financed premium. Southern County acknowledges receiving this notice.

Scotts Temple did not pay any installments due to Surety Bank under the PFA.[4] Pursuant to the PFA, on May 4, 2001, Surety Bank provided Scotts Temple notice of its intent to cancel the Policy, and on May 15, 2001 canceled

---

[3] As noted in our earlier opinion, U.S. Risk's agency contract with Southern County obligated U.S. Risk to forward the full amount of premium due on each policy regardless of whether U.S. Risk received full payment from the insured. *Id.* at 179.

[4] Scotts Temple attempted to make two payments to Surety Bank, but both were returned for insufficient funds.

the Policy, less than two months after it had taken effect. Surety Bank sent a notice of cancellation to Southern County, placing Southern County on notice that unearned premiums must be returned to Surety Bank within sixty days of the date of cancellation.

Instead of sending the total unearned premiums, which amounted to $38,685, to Surety Bank, Southern County sent $31,721.70, which represented the unearned premiums minus the unearned commissions of U.S. Risk and United National, to U.S. Risk.[5] U.S. Risk added $3,094.80, its unearned commission at the time of cancellation, to the amount Southern County had sent U.S. Risk, then took out for itself $7,133.60, claiming that this amount was its pro rata share of the portion of unearned premium it paid when Scotts Temple failed to make the down payment. U.S. Risk then sent the remaining balance, $27,682.90, to Surety Bank.

Surety Bank sued Southern County[6] to recover the difference between the total unearned premiums and the amount it received from U.S. Risk, claiming

_____

[5] The gross total premiums of $45,999 included amounts to be paid to U.S. Risk and United National as commissions. Southern County deducted the unearned portions of the agents' commissions at the time of cancellation from the amount of total unearned premiums it sent to U.S. Risk upon cancellation.

[6] Surety Bank also sued Scotts Temple, United National, and U.S. Risk. United National was severed from the case, and Surety Bank nonsuited all remaining defendants but Southern County. [Op. 180 n.2]

4

that under Texas law and the terms of the Policy and the PFA, it was entitled to receive the total amount of unearned premiums. Surety Bank moved for summary judgment, which the trial court granted. Southern County appealed.

In February 2006, we reversed the summary judgment and remanded the case to the trial court, holding that, because the summary judgment record did not contain the Policy or any other evidence establishing the terms of the Policy regarding the return of unearned premiums, a fact issue existed concerning whether Southern County had breached the Policy.[7] We reasoned that, without the Policy, neither this court nor the trial court could determine what part of the unearned premiums became payable to Scotts Temple upon the Policy's cancellation.[8]

On remand, both parties filed motions for summary judgment. This time, a copy of the Policy was part of the summary judgment evidence. Paragraph A(5) of the "Common Policy Conditions" form states what Southern County's obligations are regarding unearned premiums if the Policy is cancelled:

**A. CANCELLATION AND RENEWAL**

**5.** If this policy is cancelled, [Southern County] will send the first Named Insured any premium refund due. The

---

[7] *See id.* at 182.

[8] *See id.*

> refund will be pro rata subject to the policy minimum premium. The cancellation will be effective even if [Southern County] ha[s] not made or offered a refund.

. . .

**E.   PREMIUMS**

> The first Named Insured shown in the Declarations:

. . .

> **2.**   Will be the payee for any return premiums [Southern County] pay[s].

It is undisputed that the "first Named Insured" is Scotts Temple.

On May 25, 2007, the trial court denied Southern County's motion for summary judgment and granted summary judgment for Surety Bank. The judgment awarded Surety Bank $11,002, the difference between the total unearned premiums ($38,685) and the amount Surety Bank received from U.S. Risk ($27,682.90). The judgment also awarded Surety Bank pre- and post-judgment interest and $62,000 in attorney's fees. This second appeal followed.

## Standard of Review

A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim.[9]   When reviewing a

---

[9] *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[10]

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented.[11] The reviewing court should render the judgment that the trial court should have rendered.[12]

**Analysis**

As in the first appeal, the parties' dispute centers on whether Southern County made a proper refund of unearned premiums. In one issue, Southern County argues that it was not required to refund to Surety Bank the down payment portion of the unearned premiums because Scotts Temple never paid the down payment. Surety Bank, on the other hand, asserts that Southern County was obligated under the Policy, the PFA, and applicable statutes and regulations to send all unearned premiums to Surety Bank and that Southern

---

[10] *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004).

[11] *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

[12] *Id*.

7

County breached its contract (the Policy) by instead sending the unearned premiums to U.S. Risk.

Interpretation of insurance contracts in Texas is governed by the same rules of construction as other contracts.[13] When construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent.[14] This court is bound to read all parts of a contract together to ascertain the agreement of the parties.[15] Terms used in the policy will be given their plain, ordinary, and generally accepted meanings, unless it appears from the policy itself or by usage that the parties intended to use the words in a special or technical sense.[16]

Under the PFA, Scotts Temple assigned to Surety Bank and gave Surety Bank a security interest in Scotts Temple's right to receive "any and all

---

[13] *Upshaw v. Trinity Cos.*, 842 S.W.2d 631, 633 (Tex. 1992); *W. Reserve Life Ins. Co. v. Meadows*, 152 Tex. 559, 261 S.W.2d 554, 557 (1953) *cert. denied*, 347 U.S. 928, 74 S. Ct. 531 (1954).

[14] *Ideal Lease Serv., Inc. v. Amoco Prod. Co.,* 662 S.W.2d 951, 953 (Tex. 1983); *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980).

[15] *See Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 180 (Tex. 1965); *Pan Am. Life Ins. Co. v. Andrews*, 161 Tex. 391, 340 S.W.2d 787, 790 (1960).

[16] *Ramsay v. Md. Am. Gen. Ins. Co.,* 533 S.W.2d 344, 346 (Tex. 1976).

unearned premiums . . . which may become payable under [the Policy]." We concluded in the first appeal that this meant Surety Bank "stood in the shoes" of Scotts Temple for purposes of Surety Bank's entitlement to receive unearned premiums.[17] In other words, whatever Scotts Temple, in the absence of the PFA, would have been entitled to, Surety Bank was now entitled to.

The unresolved question on remand was "what part of the unearned premium became payable to Scotts Temple upon the Policy's cancellation."[18] Because the Policy was not part of the summary judgment record in the first appeal, we could not determine the answer to this question. Now, we can.

The Policy provides that upon cancellation, Southern County "will send the first Named Insured any premium refund due." The Policy further provides that the "first Named Insured . . . [w]ill be the payee for any return premiums we pay." The "first Named Insured" is Scotts Temple. This language is clear and unambiguous: if the Policy is cancelled, Southern County is obligated to return unearned premiums to Scotts Temple.

But this does not end the inquiry. Southern County asserts that Scotts Temple cannot receive a "refund" for premiums that it did not pay. This means,

---

[17] *S. County Mut. Ins.*, 187 S.W.3d at 181 (citing *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 420 (Tex. 2000)).

[18] *Id.* at 182.

according to Southern County, that Surety Bank cannot complain about not receiving *all* unearned premiums, since it can only recover to the extent Scotts Temple could recover, and Scotts Temple cannot receive a "refund" for the down payment it never made.  We reject this argument.

First, Southern County's position would prove too much.  It is true that, ordinarily, to "refund" is to "pay back," which implies that the refund should go to the one who paid.[19]  But "refund" does not have such a cribbed meaning in this context.[20]  If Southern County's proposed construction of "refund" were correct, that is, if Scotts Temple was not entitled to a "refund" of the *down payment* because it did not make that down payment, then Scotts Temple

---

[19] *See Daniel v. Richcreek*, 118 S.W.2d 935, 937 (Tex. Civ. App.—Austin 1938, no writ) ("Ordinarily, 'refund' means to pay back, thus implying that the payment is to be made to the party from whom received."); *see also State v. U.S. Fid. & Guar. Co.*, 193 F.2d 47, 50 (7th Cir. 1951) ("The word 'refund' is defined, 'To pay back by the party who has received it, to the party who has paid it, money which ought not to have been paid.'"); *Foss v. Halloran & Narr, Inc.*, 203 N.Y.S.2d 607, 615 (N.Y. Sup. Ct. 1960) ("In Black's Law Dictionary the word 'refund' is defined as 'to repay or restore; to return money had by one party of another.'").

[20] *See Daniel*, 118 S.W.2d at 937 (noting that "contextually, the prescribed 'refund' meant to the party legally entitled to demand and receive it from the [party holding the funds]," not to the entity that literally "paid" the money to that party); *see also Wash. Urban League v. FERC*, 886 F.2d 1381, 1386 (3rd Cir. 1989) (explaining that in some instances, "[t]he fact that the party receiving the 'refund' never actually overpaid the amounts in the refunds to the refunding party should not preclude the use of the word 'refund' to describe [a] transaction").

likewise would not be entitled to a refund of the *amount financed by Surety Bank*, since Scotts Temple did not pay that amount either.

Such a result would render meaningless premium finance agreements in which the premium finance provider secures its interest through an assignment of and security interest in refunded unearned premiums, a result clearly contrary to Texas public policy as expressed through the statutes and regulations discussed below.[21] We will not construe contracts to produce an absurd result when a reasonable alternative construction exists.[22]

A previous decision of this court, in which we considered the effect on a claim for a refund of unearned premiums where an insurance agent had paid some of the premiums on behalf of the insured, informs our construction of the term "refund" in this context. In *Fuller v. Security Union Ins. Co.*,[23] we recognized that, no matter who makes the payment, *any* payment of premiums

---

[21] *See Serv. Fin. v. Adriatic Ins. Co.*, 46 S.W.3d 436, 447 (Tex. App.—Waco 2001) ("[C]hapter 24 of the Insurance Code clearly evinces an intent on the part of the Legislature to regulate and protect the premium finance industry."), *judgm't vacated w.r.m.*, 51 S.W.3d 450 (Tex. App.—Waco 2001, no pet.). We note in this regard that U.S. Risk would have been in the same position as Surety Bank if U.S. Risk, when it "fronted" the down payment for Scotts Temple, had required Scotts Temple to sign a premium finance agreement like Surety Bank did. But U.S. Risk did not do so.

[22] *See, e.g.*, *Ill. Tool Works, Inc. v. Harris*, 194 S.W.3d 529, 533 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

[23] 37 S.W.2d 235 (Tex. Civ. App.—Fort Worth 1931, no writ).

11

to the insurer "constitutes a payment of the premium as between the insured and the insurance company."[24]

The insurance policies at issue in *Fuller*, like the Policy in this case, "expressly stipulated for payment by the [insurer] to the policyholders of the unearned premiums in the event of cancellation of the policies."[25] Accordingly, we held that the assignee of an insured's right to recover unearned premiums was entitled to recover from the insurer unearned premiums that had been paid by an insurance agent for the insured.[26] We see no reason to construe the refund-of-unearned-premium provisions in the Policy in this case any differently than we construed similar policy provisions in *Fuller*.

Second, Southern County's position is contrary to the statutory and regulatory scheme established by the State of Texas for premium finance agreements. As we noted in the first appeal of this case, premium finance companies and arrangements are governed by the provisions of former Chapter 24 of the Texas Insurance Code.[27] Former article 24.22 of the insurance code

---

[24] *Id.* at 237–38.

[25] *Id.* at 238.

[26] *Id.*

[27] *S. County Mut. Ins.*, 187 S.W.3d at 181 & n.3. As we noted in the first appeal, chapter 24 of the Insurance Code was in effect at the time the PFA in this case was signed, but it has since been recodified. *See* Act of May 25,

requires each premium finance company, upon entering into a premium finance agreement that contains a power of attorney or an assignment, to notify the insurer of the existence of the agreement and to whom the premium payment was made.[28]  Under former article 24.17, if a premium finance company has timely provided such notice, the insurer "shall return whatever unearned premiums are due under the insurance contract *directly to the premium finance company* within 60 days after the policy cancellation date."[29]

Regulations promulgated by the Texas Department of Insurance reinforce this statutory requirement and provide further indication that the insurer's obligation is to send all unearned premiums directly to the premium finance company.  These regulations specify that

> [i]f the insurance premium finance company notified the insurer of the existence of the premium finance agreement pursuant to the Insurance Code, Article 24.22, then *the entire unearned premium owed the insurance premium finance company (in trust for the*

---

1979, 66th Leg., R.S., ch. 825, § 1, 1979 Tex. Gen. Laws 2149, 2149–58 (repealed 2003) (current version at Tex. Ins. Code Ann. §§ 651.001–.209 (Vernon 2005 & Supp. 2008)).  For clarity, all citations are to the former section numbers.

[28] Tex. Ins. Code art. 24.22 (Vernon Supp. 2004).

[29] *Id.* art 24.17(f) (emphasis added); *see also Serv. Fin.*, 46 S.W.3d at 448 ("[A]rticle 24.17 defines the rights and obligations of the parties to an insurance transaction in which the premiums have been financed and the insured subsequently defaults on the finance agreement.").

*insured) shall be paid* within 60 days from the date notice of cancellation was received.[30]

In the first appeal of this case, we identified the elements Surety Bank was required to prove in order to recover on its claim against Southern County for failure to properly refund unearned premiums under the Policy:

> To prevail on a breach of contract claim seeking a refund of unearned premiums, a premium finance company must establish that (1) the insurance policy provides for a refund of unearned premiums upon cancellation, (2) the premium finance company has authority to collect the refund, (3) the premium finance company gave timely notice of the financing agreement, (4) the insured defaulted on the premium finance agreement, (5) the premium finance company gave notice of the insured's default and requested cancellation of the policy, and (6) the insurer failed to make the proper refund.[31]

Surety Bank conclusively established every element of its claim. Surety Bank established that the Policy provides for a refund of unearned premiums to Scotts Temple upon cancellation. Surety Bank timely notified Southern County of the existence of the PFA, which authorized Surety Bank to collect any and all premium refunds due to Scotts Temple under the Policy. Surety Bank notified Southern County that Scotts Temple defaulted and that the Policy was

---

[30] 28 Tex. Admin. Code § 25.10(a) (2007) (emphasis added).

[31] *S. County Mut. Ins.*, 187 S.W.3d at 181 (citing *Serv. Fin.*, 46 S.W.3d at 449); *see also INAC Corp. v. Underwriters at Lloyd's*, 56 S.W.3d 242, 253 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

14

cancelled effective May 15, 2001.  Therefore, within sixty days from May 15, 2001, Southern County was obligated to send all unearned premiums under the Policy to Surety Bank.  Southern County did not do so.  Therefore, Southern County failed to make a proper refund.  Accordingly, the trial court did not err in granting summary judgment for Surety Bank.[32]

### Conclusion

Having overruled Southern County's only issue on appeal, we affirm the trial court's judgment.


JOHN CAYCE
CHIEF JUSTICE

PANEL:  CAYCE, C.J.; HOLMAN and MCCOY, JJ.

DELIVERED:  October 23, 2008

---

[32] We note that, under the trial court's judgment, Surety Bank will recover more than its secured interest in the refund due Scotts Temple.  The regulations account for what is to happen in such circumstances:  "The insurance premium finance company shall return any monies due to the insured within 20 days from the date returned unearned premiums are received from the insurer or agent."  28 Tex. Admin. Code § 25.10(c) (2007).

15