**Affirmed and Opinion filed August 16, 2012.**



In The

# Fourteenth Court of Appeals

## NO. 14-11-00697-CV

### KATRINA COTERILL-JENKINS, EXECUTRIX OF THE ESTATE OF CHARLES K. JENKINS, M.D., Appellant,

### V.

### TEXAS MEDICAL ASSOCIATION HEALTH CARE LIABILITY CLAIM TRUST AND HOUSTON NORTHWEST RADIOLOGY ASSOCIATION, P.A., Appellees.

**On Appeal from the 333rd District Court**
**Harris County**
**Trial Court Cause No. 2010-20922**

## OPINION

Appellant Katrina Coterill-Jenkins, executrix of the estate of Charles K. Jenkins, M.D., appeals the trial court's summary judgments granted in favor of appellees, Texas Medical Association Health Care Liability Claim Trust (TMLT) and Houston Northwest Radiology Association (HNRA) on Coterill-Jenkins's breach-of-contract and other claims. Coterill-Jenkins's claims concern a professional-liability policy HNRA purchased

from TMLT on behalf of her husband, Charles K. Jenkins, M.D. Shortly after the policy was purchased, Dr. Jenkins died, and TMLT returned the premium payment to HNRA. Coterill-Jenkins contends Dr. Jenkins was the policyholder and therefore the premium should have been returned to his estate. In five issues, Coterill-Jenkins contends the trial court erred by granting TMLT and HNRA's motions for summary judgment, denying her motion for summary judgment, granting summary judgment on the claims added in her second amended petition, and sustaining TMLT's objections to her evidence.

## I

Dr. Jenkins was a physician with HNRA until he left in September 2006. Dr. Jenkins and HNRA memorialized the terms and conditions of his departure in an exit letter. Among other things, the exit letter provided that HNRA was obligated to obtain and pay for prior-acts professional-liability insurance, sometimes called "tail coverage," for Dr. Jenkins:

> 3.     According to your Employment Contract, and the Hospital Contracts to which reference is made, you are required to maintain prior acts professional liability insurance (tail) coverage at your expense for five years after your employment with HNRA terminates. However, the Executive Committee has agreed to purchase such insurance coverage for you at the expense of HNRA. This agreement overrides the referenced provision in the Employment Contract.

HNRA issued a check for Dr. Jenkins's tail coverage to TMLT in the amount of $37,306.00. TMLT deposited the check and issued an "extended reporting endorsement" providing for the coverage.[1]

Dr. Jenkins died on December 17, 2006. When TMLT learned of Charles's death and that he had not practiced medicine since leaving HNRA in September, it cancelled

---

[1] The extended reporting endorsement applied to an individual claims-made policy Dr. Jenkins requested from TMLT after he separated from HNRA. Coterill-Jenkins does not contend Dr. Jenkins's estate is entitled to any money from the individual claims-made policy; her complaint is directed solely to the extended reporting endorsement.

2

the policy and returned to HNRA the $37,306.00 payment for the extended reporting endorsement. The tail coverage was not cancelled, however, and remained in effect.

Coterill-Jenkins filed suit in April 2010 alleging breach of contract against TMLT. She later amended her petition to add allegations of breach of contract by HNRA.[2] In 2011, HNRA filed a traditional motion for summary judgment, and TMLT filed both a no-evidence and a traditional motion for summary judgment. Coterill-Jenkins then amended her petition to add claims of breach of the duty of good faith and fair dealing and misappropriation of funds against both TMLT and HNRA. Coterill-Jenkins also claimed breach of fiduciary duty against TMLT. At the same time, Jenkins filed a motion for summary judgment on her claims against TMLT and HNRA.

On July 18, 2011, the trial court signed separate orders granting TMLT's and HNRA's motions for summary judgment and denying Coterill-Jenkins's motion for summary judgment. Because we conclude the trial court did not err by granting TMLT's and HNRA'a traditional motions for summary judgment, we do not address TMLT's no-evidence motion.

## II

## A

We review summary judgments de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). A traditional summary judgment under Rule 166a(c) is properly granted only when the movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215–16 (Tex. 2003). In reviewing either a no-evidence or traditional summary-judgment motion, we must take as true all evidence favorable to the nonmovant and draw every reasonable inference and

---

[2] Although Coterill-Jenkins mentions unjust enrichment against HNRA in her first amended petition, in her appellate brief she contends this claim was first made in her second amended petition.

resolve all doubts in favor of the nonmovant. *Mendoza v. Fiesta Mart, Inc.,* 276 S.W.3d 653, 655 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

When we review cross-motions for summary judgment, we consider both motions and render the judgment that the trial court should have rendered. *Mid-Continent Cas. Co. v. Global Enercom Mgmt., Inc.,* 323 S.W.3d 151, 153–54 (Tex. 2010); *Weingarten Realty Mgmt. Co. v. Liberty Mut. Fire Ins. Co.,* 343 S.W.3d 859, 862 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

B

Coterill-Jenkins briefs her first and third issues together. In her first issue, she contends that the trial court erred in granting TMLT's motion for summary judgment on her breach-of-contract claim. In her third issue, she contends that the trial court erred in failing to grant her motion for summary judgment asserting breach of contract against TMLT. To recover for breach of contract, a plaintiff must show (1) the existence of a valid contract, (2) the plaintiff performed or tendered performance, (3) the defendant breached the contract, and (4) the plaintiff suffered damages as a result of the defendant's breach. *Parker Drilling Co. v. Romfor Supply Co.,* 316 S.W.3d 68, 72 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

In these issues, Coterill-Jenkins posits that Dr. Jenkins was the policyholder of the tail coverage; therefore, TMLT should have promptly refunded any unearned premium to him, and its failure to do so constitutes a breach of contract. The policy does not identify Dr. Jenkins as a "policyholder," nor does the term appear anywhere in the policy. Instead, Dr. Jenkins is identified only as the "named insured," which is defined as "the physician so designated in the Declarations Page."

To prove that Dr. Jenkins was the policyholder entitled to return of the premium paid for the extended reporting endorsement, Coterill-Jenkins first points to a provision of the Insurance Code which provides that an insurer "shall promptly refund the appropriate portion of any unearned premium to the policyholder" if the policy has a

remaining unearned premium reserve and is canceled or terminated by the insured or the insurer before the end of its term. *See* Tex. Ins. Code § 558.002. But Coterill-Jenkins acknowledges that TMLT was created as a healthcare-liability-claim trust under former Insurance Code article 21.49–4, which provides that such an entity is not engaged in the business of insurance and the Insurance Code does not apply to it. *See* Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 31.13, 1977 Tex. Gen. Laws 2063, 2064, *repealed by* Act of May 25, 2005, 79th Leg., ch. 727, § 18(a)(6), 2005 Tex. Gen. Laws 2186, 2187 (effective April 1, 2007) ("The trust is not engaged in the business of insurance under this code and other laws of this state and the provisions of any chapters or sections of this code are declared inapplicable to a trust organized and operated under this article, provided that the State Board of Insurance may require any trust . . . to satisfy reasonable minimum requirements to insure the capability of the trust to satisfy its contractual obligations.").

Although Coterill-Jenkins concedes that TMLT is not subject to the Insurance Code, she nevertheless argues that because former section 21.49–4 also provides that the State Board of Insurance may sanction a trust that violates the Insurance Code, section 558.002 of the Code "should be relevant to good[-]faith issues and fiduciary duties" of TMLT. But Coterill-Jenkins cites no authority for applying section 558.002 to TMLT in contravention of the express language of former article 21.49–4; therefore, we decline to impose liability on TMLT based on section 558.002's provision that unearned premiums be returned to the policyholder.

Coterill-Jenkins next argues that Dr. Jenkins's policy provides that his interest is not assignable and therefore, as policyholder, his estate was entitled to the refund of the premium HNRA paid, citing the following language:

> No Named Insured's interest under this policy is assignable. If any such insured shall die or be adjudged incompetent, this insurance shall thereupon terminate automatically as to such insured, but shall cover the legal representative of such insured's estate as an insured with respect to liability

5

previously incurred and covered by this policy. Pro rata return premium will be computed from the date of termination.

Coterill-Jenkins acknowledges that this provision does not specifically provide that the premium will be returned to the insured, but she argues it may be implied from the paragraph's context.

In support of her contention, Coterill-Jenkins cites *Fuller v. Security Union Insurance Co.*, 37 S.W.2d 235 (Tex. Civ. App.—Fort Worth 1931, no pet.). In that case, several firms and individuals purchased property insurance from Security Union through an agent, Fuller. *Id.* at 236. The policies expressly provided that if a policy is cancelled after the premium was paid, "the unearned portion shall be returned on surrender of this policy or last renewal." *Id.* Security Union cancelled the policies, but did not refund the premiums to the firms or individuals. *Id.* The policyholders assigned their rights to a refund to Fuller in exchange for new policies with other companies. *Id.* Fuller then sued the insurance company to recover the refunds. *Id.* The court concluded that because the policies expressly stipulated that unearned premiums would be returned to the policyholders, and the policyholders had assigned their rights to Fuller, he was entitled to receive the unearned premiums. *Id.* at 238. *Fuller* does not advance Coterill-Jenkins's arguments, however, as it merely confirms that the policyholder who actually paid the premium (or its assignee) is the party entitled to the return of that premium when the insurance policy is cancelled.

Coterill-Jenkins also contends that any ambiguity in the policy should be construed in favor of the insured and against the insurer, citing *U.S. Insurance Co. v. Brown*, 285 S.W.2d 843, 848–49 (Tex. Civ. App.—Texarkana 1955, no pet.). She notes that HNRA is not a party to the policy, and contends that if TMLT intended for someone other than the insured to be the policyholder it should have stated so in the policy. Coterill-Jenkins also points to definitions from several online dictionaries defining a "policyholder" as an insured person or the owner of an insurance policy. Thus, Coterill-Jenkins contends the policy language should be construed in favor of her position that Dr.

6

Jenkins, as the insured and owner of the extended reporting endorsement, was the party entitled to receive the refund due rather than HNRA, the party that paid for the coverage.

The rules governing interpretation of contracts, in general, likewise apply to interpreting insurance policies. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London,* 327 S.W.3d 118, 126 (Tex. 2010) (op. on reh'g). When construing an insurance contract, the court's primary concern is to give effect to the written expression of the parties' intent. *Mid-Continent Cas. Co. v. Global Enercom Mgmt., Inc.,* 323 S.W.3d 151, 154 (Tex. 2010) (per curiam). We examine the entire policy and seek to harmonize and give effect to all provisions so that none will be meaningless. *Gilbert Tex. Constr.*, 327 S.W.3d at 126. The policy's terms are given their ordinary and generally accepted meaning unless the policy shows the words were meant in a technical or different sense. *Gilbert Tex. Constr.*, 327 S.W.3d at 126.

If an insurance contract uses unambiguous language, we must enforce it as written. *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.,* 267 S.W.3d 20, 23 (Tex. 2008). Mere lack of clarity does not create an ambiguity. *Universal Health Servs., Inc. v. Renaissance Women's Group. P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). Only if the policy is subject to two or more reasonable interpretations may it be considered ambiguous. *State Farm Lloyds v. Page,* 315 S.W.3d 525, 527 (Tex. 2010). Even if parties interpret a policy differently, an insurance contract having a clear and definite meaning is not ambiguous as a matter of law. *Mid–Continent Cas. Co.,* 323 S.W.3d at 154 (citations omitted). Whether a contract is ambiguous is a question of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).

Although extrinsic evidence is generally not admissible to vary the terms of an unambiguous agreement, it may be admissible "to give the words of a contract a meaning consistent with that to which they are reasonably susceptible, i.e., to 'interpret' contractual terms." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.,* 907 S.W.2d 517, 521 (Tex. 1995); *Mescalero Energy, Inc. v. Underwriters Indem. Gen.*

7

*Agency, Inc*., 56 S.W.3d 313, 320 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). In particular, a specialized industry or trade term may require extrinsic evidence of the commonly understood meaning of the term within a particular industry. *See CBI Indus., Inc.,* 907 S.W.2d at 521 n.6 (noting that extrinsic evidence may be consulted in determining the commonly understood meaning of terms within a particular "place, vocation, trade, or industry").

In response to Coterill-Jenkins's argument that Dr. Jenkins was the policyholder for the extended reporting endorsement, TMLT argues that the "policyholder" is the person or entity that pays the premium for the insurance policy, and the "insured" is the person or entity that is covered under the policy. TMLT points to the affidavit of John Alexander, TMLT's senior vice president of underwriting services and a signatory to Dr. Jenkins's policy. In his affidavit, Alexander attests that he has knowledge of the duties, policies, and procedures for insurance-policy underwriting at TMLT in general and as specifically applied to this lawsuit. He explains that medical groups like HNRA "purchase group policies which provide health[-]care[-]liability coverage for its physician employees and/or for the group itself" and the medical group "is the payor of the premium and the physicians and/or professional association whom the medical group seeks to insure are the named insureds of the policy." Concerning the return of premiums, Alexander states that the customary and usual practice of the insurance industry is to reimburse the person or entity that paid the premium when premiums are refunded. He further states that in this case, TMLT's obligation was to refund the extended reporting endorsement payment to HNRA, the entity that made the payment.

Coterill-Jenkins maintains that Alexander is a biased witness and his opinion is entitled to no weight. She asserts that no provision in the policy authorized TMLT to rebate HNRA the unearned premium, and "[s]ecret understandings or customs of the insurance company . . . of which the insured can have no possible knowledge should not be enforced." But a summary judgment may be based on the uncontroverted testimonial

8

evidence of an interested witness if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. Tex. R. Civ. P. 166a(c). This same notion applies to the testimony of an expert witness when he opines on a topic about which the trier of fact must be guided solely by the opinion testimony of experts. *Id.* Alexander's testimony was clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and Coterill-Jenkins offered no controverting testimony. Therefore, the trial court was entitled to consider Alexander's testimony concerning the meaning of the policy's terms and the customary and usual practice of the insurance industry. *See CBI Indus., Inc.,* 907 S.W.2d at 521 n.6; *Mescalero Energy, Inc*., 56 S.W.3d at 320.

Moreover, Alexander's testimony is consistent with the plain language of the provision on which Coterill-Jenkins relies, which provides in relevant part that "[p]ro rata return premium will be computed from the date of termination." This language may be fairly read to reflect an intention to "return" or give back the premium to the party that paid it. Alexander testified that "[p]ursuant to the terms of the individual claims-made policy . . . and TMLT procedures, the leave of absence and subsequent death of Dr. Jenkins caused the premium otherwise required for tail coverage to be waived." As a result, "TMLT processed and mailed to HNRA a refund check in the amount of $37,306.00." Alexander also stated that "[i]f any payment had been made on Dr. Jenkins' individual policy after September 9, 2006, that premium would have been refunded to Dr. Jenkins, his wife, or his estate." Alexander stated, and it is undisputed, that TMLT received no payment from Dr. Jenkins, his wife, or his estate for the purchase of his policy. Because Dr. Jenkins never paid the premium on the policy, there was no payment to return to his estate.

Coterill-Jenkins directs us to no relevant authorities or evidence to support her interpretation of the policy language. The dictionary definitions of "policyholder" she relies on to argue that Dr. Jenkins is the insured and the owner of the policy is not dispositive on these facts, as it is undisputed that Dr. Jenkins was the "named insured"

9

and the person for whom TMLT provided coverage, including the extended reporting endorsement paid for by HNRA. Further, Coterill-Jenkins's contention that any lack of clarity in the policy language caused by the failure to expressly identify which party receives refunded premiums is not controlling, as mere lack of clarity does not create an ambiguity. *Universal Health Servs., Inc.*, 121 S.W.3d at 746. On this record, therefore, Coterill-Jenkins has failed to demonstrate that the policy is ambiguous. *See Mid–Continent Cas. Co.*, 323 S.W.3d at 154; *State Farm Lloyds*, 315 S.W.3d at 527.

Finally, Coterill-Jenkins argues that Dr. Jenkins's estate was entitled to the refunded premium because TMLT was a trustee under the policy and Dr. Jenkins, as the insured, was the beneficiary. Consequently, she maintains, once premiums were paid under the policy, they became an asset of the trust and TMLT had a fiduciary duty to return the trust's assets to Dr. Jenkins's estate. Coterill-Jenkins reaches this conclusion based on an excerpt from a TMLT website printout purporting to show that TMLT is "governed by applicable regulations of the Texas Trust Act"[3] and the fact that TMLT has the word "trust" in its name. However, the mere designation of a party as "trustee" does not create a trust. *Nolana Dev. Ass'n v. Corsi*, 682 S.W.2d 246, 249 (Tex. 1984); *Spiritas v. Robinowitz,* 544 S.W.2d 710, 715 (Tex. Civ. App.—Dallas 1976, writ ref'd n.r.e.). The inclusion of the word "trust" in TMLT's name is simply descriptive and does not automatically confer additional rights and duties on TMLT and its named insureds beyond those contemplated in their policies. Moreover, the policy contains no language indicating that the parties intended to create a trust, and we therefore we decline to impose one. *See Chapman Children's Trust v. Porter & Hedges, L.L.P*., 32 S.W.3d 429, 438 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *see also* Tex. Prop. Code § 112.001 (listing methods of creating a trust under the Texas Trust Code).

Accordingly, we conclude that the policy language combined with Alexander's testimony concerning the insurance-industry custom and practice of reimbursing

---

[3] The trial court sustained TMLT's objections to the website excerpt, but for purposes of this issue we will assume it was admissible.

premiums to the person or entity that paid the premium conclusively demonstrates that TMLT was not obligated to pay to Dr. Jenkins's estate the premium HNRA paid for the extended reporting endorsement. Therefore, the trial court did not err in denying Coterill-Jenkins's motion for summary judgment on her breach-of-contract claim against TMLT. For the same reasons, TMLT demonstrated that it was entitled to summary judgment on Coterill-Jenkins's breach of contract claim. We overrule Coterill-Jenkins's first issue and her third issue as to TMLT.

C

We next turn to Coterill-Jenkins's second issue in which she contends the trial court erred in granting HNRA's motion for summary judgment on her breach-of-contract claim against it. As before, Coterill-Jenkins also argues that the trial court erred in denying her motion for summary judgment on that claim.

Coterill-Jenkins's breach-of-contract claim against HNRA is based on the exit letter, which she contends constitutes a valid settlement agreement between HNRA and Dr. Jenkins. Specifically, Coterill-Jenkins argues that Dr. Jenkins agreed to give up his right to sue HNRA[4] in consideration for HNRA's agreement to purchase the tail coverage, which Dr. Jenkins was otherwise obligated to purchase under his employment contract. According to Coterill-Jenkins, HNRA's agreement to purchase the tail coverage for Dr. Jenkins rather than to merely pay the premiums for him indicates that Dr. Jenkins was the owner of the tail coverage, not HNRA, and therefore the returned premium payment for the extended reporting endorsement should have been paid to him. Coterill-Jenkins charges that HNRA appropriated funds it knew or should have known belonged to Dr. Jenkins's estate and received a windfall constituting unjust enrichment.

HNRA disputes Coterill-Jenkins's contentions that the exit contract provided for HNRA to purchase tail coverage for Dr. Jenkins specifically in exchange for a general

---

[4] Though it is unclear from the record, Dr. Jenkins was apparently not leaving voluntarily.

release of claims and that there was a failure of consideration for the exit letter. HNRA points out that the exit letter contains a general release of claims that is mutual and so did not depend on monetary consideration.[5] HNRA also argues that HNRA's limited obligation under the exit letter was to purchase a prior-acts professional liability policy, which it did and which remained in force after Dr. Jenkins's death. HNRA further argues that maintaining the tail coverage benefited HNRA as much as it benefited Dr. Jenkins, and HNRA's agreement to purchase the tail coverage for Dr. Jenkins ensured that the coverage would continue after his employment ceased.

It is undisputed that the exit letter obligated HNRA to purchase a tail coverage policy for Dr. Jenkins and HNRA did so. The exit letter did not require HNRA to pay any refunded premiums for that coverage to Dr. Jenkins, nor did it provide that Dr. Jenkins would give up his right to sue HNRA solely in exchange for the tail coverage. Moreover, it is also undisputed that the coverage remained in effect even after TMLT returned the premium payment to HNRA. Therefore, HNRA fulfilled its contractual obligation to Dr. Jenkins and the trial court did not err by denying Coterill-Jenkins's motion for summary judgment against HNRA and granting HNRA's motion for summary judgment on Coterill-Jenkins's breach-of-contract claim.

We overrule Coterill-Jenkins's second and third issues directed to her breach-of-contract claim against HNRA.

D

In her fourth issue, Coterill-Jenkins contends the trial court erred in granting summary judgments in favor of TMLT and HNRA on the claims she added in her second

---

[5] Paragraph 8 of the exit letter provides as follows:

> You and HNRA each release, acquit, discharge and covenant to not sue the other, with respect to any and all claims, liabilities, demands, losses, expenses or causes of action . . . that arose or may have arisen prior to the execution of this letter agreement, and based upon your employment by HNRA under your Employment Contract (except severance matters to which this letter agreement refers), or arising from your relationship to HNRA as an officer, director, or shareholder.

amended petition after TMLT and HNRA moved for summary judgment. She maintains that she alleged misappropriation of funds, breach of the duty of good faith and fair dealing, and unjust enrichment against both TMLT and HNRA, and breach of fiduciary duty against TMLT. Alternatively, Coterill-Jenkins contends genuine issues of material fact exist concerning these claims, and she argues that TMLT and HNRA did not address these claims in their motions.[6]

On appeal, Coterill-Jenkins does not address her additional claims individually or explain the basis for these claims. Instead, in an extended paragraph, she discusses authorities holding that fiduciary relationships may arise between shareholders in certain circumstances, as well as some Texas courts' recognition of claims for "oppression" of minority shareholders by majority shareholders. But Coterill-Jenkins makes no argument that any of these circumstances are relevant or apply in any way to the facts of this case. Moreover, in a supplemental summary-judgment brief, Coterill-Jenkins argued that when HNRA paid for the policy and the tail coverage, Dr. Jenkins had been removed from the group policy and he was no longer a stockholder or employee of HNRA. We conclude Coterill-Jenkins has waived this portion of her issue by failing to provide sufficient argument and analysis. *See* Tex. R. App. P. 38.1(i); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.). We therefore do not consider whether these arguments are in some way meritorious.

---

[6] In response to this issue, HNRA argues in part that because Coterill-Jenkins failed to request the reporter's record from the oral hearing on the summary-judgment motions, we "must presume the evidence supported the trial court's judgment." But this presumption does not apply in the summary-judgment context. Rule 166a(c) expressly requires that both the reasons for the summary judgment and the objections to it must be in writing and before the trial judge at the hearing. *See City of Hous. v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979). Although an oral hearing on a motion for summary judgment may be helpful to the parties and the court, it is not required because the summary-judgment rules prohibit the presentation of oral testimony at the hearing. *See Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998). The cases HNRA relies on do not involve summary judgments and are inapposite. *See Mays v. Pierce*, 281 S.W.2d 79, 80 (Tex. 1955) (appeal from bench trial); *Sam Houston Hotel, L.P. v. Mockingbird Rest., Inc.*, 191 S.W.3d 720, 721 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (same).

Nevertheless, we will consider Coterill-Jenkins's assertion that TMLT and HNRA did not address all of her claims in their motions for summary judgment. A party may not be granted judgment on a cause of action not addressed in a summary-judgment proceeding. *See Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983) (per curiam). The portion of a final summary judgment rendered on the plaintiff's entire case under these circumstances must generally be reversed because the judgment grants more relief than requested. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001). But reversal is not always necessary when a party amends their petition after an opposing party files a motion for summary judgment if (1) the amended petition essentially reiterates previously pleaded causes of action, (2) a ground asserted in a motion for summary judgment conclusively negates a common element of the newly and previously pleaded claims, or (3) the original motion is broad enough to encompass the newly asserted claims. *See Rotating Servs. Indus., Inc. v. Harris*, 245 S.W.3d 476, 487 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Lampasas v. Spring Ctr., Inc.*, 988 S.W.2d 428, 435–36 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

In her second amended petition, Coterill-Jenkins alleged that TMLT's return of the refunded premium to HNRA unjustly enriched HNRA, and that both "are guilty of the breach of good faith and fair dealing and misappropriation of funds." Coterill-Jenkins also argued in her motion for summary judgment that HNRA's receipt of the returned premium resulted in a windfall amounting to unjust enrichment and that "HNRA appropriated funds which it knew or should have known belonged to the Estate of Dr. Jenkins." Thus, the basis for these tort claims is the same conduct Coterill-Jenkins asserts constitutes a breach of contract—the return of the premium to HNRA rather than Dr. Jenkins's estate. Moreover, Coterill-Jenkins alleged the same damages for all her claims—the amount of the unearned premium. Because Coterill-Jenkins's tort claims allege the breach of a duty imposed by an agreement rather than by operation of law, these claims are contractual in nature and are thus are subsumed by the contract claim. *See Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 673–75 (Tex. App.—Houston

14

[1st Dist.] 1996, no pet.); *see also Rotating Servs. Indus.*, 245 S.W.3d at 487 (holding appellant was not entitled to reversal of summary judgment based on amended pleading asserting additional causes of action against appellees who conclusively established that appellant was not entitled to policy proceeds). We have already held that TMLT and HNRA conclusively demonstrated that HNRA, not Dr. Jenkins or his estate, was entitled to the return of the premium; therefore, Coterill-Jenkins's tort claims based on the same conduct also must fail.

Coterill-Jenkins also alleged that TMLT breached its fiduciary duty to Dr. Jenkins when it did not pay the refunded premium to his estate because "TMLT held such funds in trust for Dr. Jenkins." She also argued in her motion for summary judgment that because the premium became an asset of the trust, "TMLT had a fiduciary duty to return assets of the trust to Dr. Jenkins's estate." We have already determined that Coterill-Jenkins presented no evidence supporting the existence of a trust relationship between Dr. Jenkins and TMLT arising from the policy. Further, Alexander testified that no trust was created between TMLT and Dr. Jenkins for any insurance policy or premium, no trust document exists between TMLT and Dr. Jenkins, Dr. Jenkins did not give TMLT any money to hold in trust for any insurance policy or premium, and no trustee exists for any alleged trust between TMLT and Dr. Jenkins for any insurance policy or premium. Coterill-Jenkins does not argue that a fiduciary relationship arose between Dr. Jenkins and TMLT on any other basis.[7] We conclude, therefore, that TMLT conclusively demonstrated that it did not owe a fiduciary duty to Dr. Jenkins. *See Farah*, 927 S.W.2d at 675–76.

E

In her fifth issue, Coterill-Jenkins contends the trial court erred in sustaining TMLT's objections to her evidence. Coterill-Jenkins asserts in a one-paragraph argument

---

[7] We note courts have held that there is no general fiduciary duty between an insurer and its insured. *E.R. Dupuis Concrete Co. v. Penn Mut. Life Ins. Co.,* 137 S.W.3d 311, 318 (Tex. App.—Beaumont 2004, no pet.); *Wayne Duddlesten, Inc. v. Highland Ins. Co.,* 110 S.W.3d 85, 96 (Tex. App.—Houston [1 Dist.] 2003, pet. denied).

that it is "not clear" what evidence the court overruled, and contends only that her attorney's fees affidavit and the documents obtained from the TMLT website should have been allowed as evidence. Coterill-Jenkins provides no meaningful argument or analysis to support her issue, and she does not contend the trial court's ruling was harmful.

To show the trial court abused its discretion in excluding evidence, a complaining party must demonstrate that the trial court erred in excluding the evidence, the evidence was controlling on a material issue dispositive to the case, and the error probably caused rendition of an improper judgment. *See Tex. Dep't of Transp. v. Able,* 35 S.W.3d 608, 617 (Tex. 2000). It is the complaining party's burden, not ours, to show harm from an erroneous evidentiary ruling. *In re M.S.,* 115 S.W.3d 534, 538 (Tex. 2003); *see also City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753–54 (Tex. 1995) ("A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted."). Coterill-Jenkins has not shown that the trial court erred in excluding her evidence or that she was harmed by the trial court's ruling, therefore we overrule her fifth issue.

\* \* \*

Having overruled Coterill-Jenkins's issues, we affirm the trial court's judgment.

/s/ Jeffrey V. Brown
   Justice

Panel consists of Chief Justice Hedges and Justices Seymore and Brown.

16