# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00102-CV

---

**Michael Steve Rush, Appellant**

v.

**Craig W. Johnson, Individually, and Craig W. Johnson Enterprises, Inc. d/b/a
Texas Hydraulics and Pneumatics, Appellees**

---

**FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-18-001656, THE HONORABLE DON R. BURGESS, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Michael Steve Rush appeals the district court's order granting summary judgment in favor of Craig W. Johnson, Individually, and Craig W. Johnson Enterprises, Inc. d/b/a Texas Hydraulics and Pneumatics (collectively, Appellees). After Appellees filed their amended motion for summary judgment, Rush filed an amended petition abandoning his previously pleaded causes of action and presenting a declaratory-judgment request that he contends was not addressed in Appellees' motion. On appeal, Rush contends that the district court erred by granting greater relief than Appellees sought in their amended motion for summary judgment. We will affirm the district court's order.

# BACKGROUND[1]

Rush and Johnson discussed the possibility of going into the hydraulic-repair business together in the spring of 1999. Their original discussion contemplated that Johnson would run the business aspects of the operation and Rush would take care of the day-to-day repair work and training and supervision of service personnel for the business. Also in early 1999, Rush and Johnson, along with Rush's wife Liz Rush, Johnson's father Ronald "Pete" Johnson, Johnson's mother Caroline Johnson, and Johnson's brother Trey Johnson, attended a meeting at Johnson's parents' home to discuss creation of the new business. Pete and Caroline were to create the new entity and help run the new business in the capacity of directors. Trey would contribute financially by making purchases with his credit card and would be employed by the new entity as the outside salesman in the near future.

Rush was offered a 20% stake in the new business in exchange for a monetary contribution of $15,000 and his agreements to run the shop, be lead mechanic, and teach Johnson how to repair hydraulic components. Craig, Pete, Caroline, and Trey would hold the remaining 80% interest. However, because Rush did not want his name used on anything and did not want any liability if the new venture failed, he agreed to accept 20% of the net profit realized from the sale of the business, if and when it sold, in exchange for his $15,000 contribution.[2]

---

[1] The facts are taken from Rush's amended petition, which was his live pleading when the district court heard Appellees' amended summary judgment, and the undisputed summary judgment evidence.

[2] Rush's sworn (and not supplemented) responses to interrogatories state that his "percentage agreement" was made at Pete and Caroline's home in 1999 and that it was for an ownership interest of "25% of the company." But Rush's live pleading states that his agreement was for "20% of the net profit from the sale of the business."

Rush began working for the new business, Caroline Johnson Hydraulics, Inc. (CJH) when it began operations in the summer of 1999. CJH did business under the assumed name of "Texas Hydraulics & Pneumatics, Inc." (Texas Hydraulics). Rush never declared to the Internal Revenue Service any alleged ownership interest in Texas Hydraulics.

CJH's ownership changed over the years. Trey left CJH in 2003. In 2008, Pete and Caroline retired and sold their interest in CJH to Craig Johnson. Also in 2008, Craig Johnson formed Craig W. Johnson Enterprises, Inc. (Enterprises) and kept the assumed name of Texas Hydraulics.

As of 2007, Rush was still working for CJH, as reflected in his W-2 Wage and Tax Statement, identifying his employer as "Caroline Johnson Hydraulics, Inc." Rush claimed that he learned about Johnson's formation of Enterprises "[w]hen the name showed up on my checks." Rush's W-2 statements for 2012, 2014, 2015, 2016, and 2017 show that he was working for Enterprises, which is identified as his employer for each of those years. On June 3, 2017, Rush was terminated from Enterprises.

**Rush's lawsuit against Appellees**

Rush sued Appellees on April 4, 2018, alleging causes of action for breach of contract, fraud in a stock transaction, and promissory estoppel, and requesting a declaratory judgment

> [t]o declare the Parties' ownership interest in Craig W. Johnson Enterprises, Inc. d/b/a Texas Hydraulics and Pneumatics and issue an order requiring Defendants to issue a stock certificate to [Rush] consistent with the Court's determination.

Appellees initially filed a general denial, followed by an amended answer alleging the affirmative defenses of accord and satisfaction, laches, payment, statute of limitations, and

3

mitigation. The amended answer included a verified denial stating that "the agreements allegedly made by Rush were with CJH," not "Craig W. Johnson and Craig W. Johnson Enterprises d/b/a Texas Hydraulics and Pneumatics" who were not proper parties to the suit. The amended answer also pleaded a counterclaim for sanctions against Rush for filing a frivolous lawsuit. *See* Tex. Civ. Prac. & Rem. Code § 10.004(c); Tex. R. Civ. P. 13. Along with their amended answer, Appellees filed a motion for summary judgment on Rush's claims.

Three weeks later, on October 25, 2018, Appellees filed an amended motion for summary judgment resulting in the order challenged here. The amended motion contended, among other things, that Rush's causes of action against Appellees were barred by the applicable four-year statutes of limitations. *See* Tex. Civ. Prac. & Rem. Code §§ 16.004(a)(4) (four-year limitations period for fraud claims), 16.051 (four-year residual limitations period); *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (stating that four-year residual limitations period is applicable to breach of contract claims); *Prestige Ford Garland Ltd. P'ship v. Morales*, 336 S.W.3d 833, 836 (Tex. App.—Dallas 2011, no pet.) (stating that four-year residual limitations period is applicable to promissory estoppel claims).

**Rush amends petition and responds to Appellees' amended summary-judgment motion**

Rush filed an amended petition on January 16, 2019, dropping all of his previously pleaded causes of action—i.e., for breach of contract, fraud in a stock transaction, and promissory estoppel—and presenting a revised request for declaratory judgment that no longer referenced Appellees but only "Defendants." Specifically, Rush asked the district court

> [t]o declare and confirm the Parties' agreement that [he] is entitled to 20% of the net profit realized from the sale of Defendants' hydraulic repair business, if and when it sells.

4

The next day, Rush filed a response to Appellees' amended summary-judgment motion. The response referred to "Craig W. Johnson, Craig W. Johnson Enterprises, Inc. d/b/a Texas Hydraulics & Pneumatics" collectively as "Defendants," stated that all of Rush's causes of action were dropped, and requested only declaratory relief:

> [Rush] has amended his lawsuit to drop his causes of action for Breach of Contract, Fraud in a Stock Transaction, and Promissory Estoppel, *and now only seeks a declaratory judgment* from the Court confirming the parties' agreement and declaring his right pursuant to the agreement between [Rush] and Defendants to 20% of the net profit realized from the sale of Defendants' hydraulic repair business, if and when it sells.

(Emphasis added.)

On January 24, 2019, the district court signed an order granting Appellees' amended motion for summary judgment without specifying the grounds for its ruling. The order recited that Rush would take nothing on his claims and clarified that "[t]his is a final and appealable order." This appeal followed.

**DISCUSSION**

On appeal, Rush contends that the district court erred by granting greater relief than Appellees sought in their amended motion for summary judgment. Specifically, Rush contends that Appellees' amended motion for summary judgment did not address Rush's request for declaratory judgment as set forth in his live pleading. Appellees respond that this appeal is improper because no controversy currently exists between the parties and that the district court's ruling foreclosed any potential recovery by Rush against CJH, which ceased operations and dissolved in 2008, ten years before Rush filed the underlying suit.

We review a trial court's grant of summary judgment de novo. *Community Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017). We consider whether the movant showed its entitlement to judgment as a matter of law, taking as true all evidence favorable to the nonmovant and indulging reasonable inferences and resolving doubts in its favor. *Id*. When, as here, a trial court does not specify the grounds for its grant of summary judgment, we must affirm if any of the grounds asserted in the summary-judgment motion are meritorious. *Id*. To prevail on a traditional motion for summary judgment, a movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Id*. at 681; *see* Tex. R. Civ. P. 166a(c). An issue is established conclusively if reasonable minds could not differ about the conclusion to be drawn from the facts in the record. *Hansen*, 525 S.W.3d at 680.

**Effect of amended petition**

We begin our analysis by determining the effect of Rush's amended petition as to Appellees' amended motion for summary judgment.

### 1. Breach of contract, fraud, and promissory estoppel causes of action

Rush's amended petition omitted the breach of contract, fraud in a stock transaction, and promissory estoppel causes of action that he had pleaded in his original petition, effectively nonsuiting them. *See Rodarte v. Investeco Grp., L.L.C.*, 299 S.W.3d 400, 408 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (noting that act of omitting claims from amended petition effectively nonsuited those omitted claims); *see also* Tex. R. Civ. P. 62 (distinguishing amended pleadings from supplemental pleadings), 65 (providing that substituted pleading supersedes original one). The record reflects that the only matter before the district court when it ruled was Rush's declaratory-judgment request.

6

Rush contends that his amended petition also alleged a "new Breach of Cont[r]act" claim. But Rush's amended petition deleted any reference to a breach of contract claim and makes no pleading for an award of damages. The amended petition sought only declaratory relief. As we have noted, Rush's amended response to the amended summary-judgment motion clarified that he "ha[d] amended his lawsuit to drop his causes of action for Breach of Contract, Fraud in a Stock Transaction, and Promissory Estoppel, *and now only s[ought] a declaratory judgment from the Court*[.]" (Emphasis added.)

Rush further contends that "[s]ummary judgment cannot be rendered on the merits of a claim that has been abandoned before the summary judgment ruling." This complaint is directed to the breach of contract, fraud in a stock transaction, and promissory estoppel causes of action that Rush dropped from his amended petition. But apart from this statement, Rush presents no argument indicating how he was harmed by this alleged error. *See Wilkinson v. Dallas/Fort Worth Int'l Airport Bd.*, 54 S.W.3d 1, 18 (Tex. App.—Dallas 2001, pet. denied) (rejecting assertion that trial court erred by granting summary judgment as to claims that were dropped before ruling on motion for summary judgment because there was no showing of harm); *see also* Tex. R. App. P. 44.1(a) (providing that no judgment may be reversed unless trial court error probably caused rendition of improper judgment or probably prevented appellant from properly presenting case to court of appeals). Thus, Rush has not shown his entitlement to reversal of Appellees' summary judgment on this basis.

### 2. Declaratory-judgment request

As to Rush's request for declaratory judgment—which was the only matter remaining before the district court when it heard Appellees' motion—we conclude that the district court did not err by granting summary judgment. The Texas Declaratory Judgments Act

is a remedial statute designed to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. *See* Tex. Civ. Prac. & Rem. Code § 37.002(b); *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). The Declaratory Judgments Act does not alter a party's substantive rights nor does it expand a trial court's jurisdiction. *Craig v. Tejas Promotions, LLC*, 550 S.W.3d 287, 298 (Tex. App.—Austin 2018, no pet.); *see Local Neon Co. v. Strayhorn*, No. 03-04-00261-CV, 2005 Tex. App. LEXIS 4667, at *18 (Tex. App.—Austin June 16, 2005, no pet.) (mem. op.) (same). A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. *Bonham State Bank*, 907 S.W.2d at 467. For a justiciable controversy to exist, there must be a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute. *Id.*; *Rodarte*, 299 S.W.3d at 408-09.

Rush complains that Appellees' amended motion for summary judgment did not address Rush's request for declaratory judgment as set forth in his live pleading, and he notes that summary judgments may only be granted on grounds expressly asserted in the summary-judgment motion. Tex. R. Civ. P. 166a(c); *G & H Towing v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011). Generally, a party is not entitled to a final summary judgment on the entire case if the party fails to address claims asserted in an amended petition because such judgment would grant more relief than requested. *Silver Gryphon, LLC v. Bank of N.Y. Mellon*, 529 S.W.3d 595, 598 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001) (noting that judgment that grants more relief than party is entitled to is subject to reversal); *Rust v. Texas Farmers Ins. Co.*, 341 S.W.3d 541, 552 (Tex. App.—El Paso 2011, pet. denied) (citing *Lehmann*). But an amended, supplemental, or new motion for summary judgment is not always necessary when: (1) an amended petition

8

"essentially reiterates" previously pleaded theories of liability; (2) a ground asserted in a motion for summary judgment conclusively negates a common element of the newly and previously pleaded claims; or (3) the original motion is broad enough to encompass the newly asserted claims. *Silver Gryphon, LLC*, 529 S.W.3d at 598; *Coterill-Jenkins v. Texas Med. Ass'n Health Care Liab. Claim Tr.*, 383 S.W.3d 581, 592 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *Rust*, 341 S.W.3d at 552; *see Magee*, 347 S.W.3d at 297-98 ("Although a trial court errs in granting a summary judgment on a cause of action not expressly presented by written motion, we agree that the error is harmless when the omitted cause of action is precluded as a matter of law by other grounds raised in the case."). Determining whether a motion is sufficient to support the trial court's grant of summary judgment requires comparison of the petitions and the liability theories that were pleaded with the grounds asserted in the motion for summary judgment. *See Silver Gryphon, LLC*, 529 S.W.3d at 599.

First, we consider whether Rush's amended petition "essentially reiterates" his request for declaratory judgment and theory of liability that was in his original petition.

### a. Rush's original petition

Rush alleged that in June 1999, he attended a meeting at Craig Johnson's parents' home, where Craig Johnson and members of Johnson's family were also present.

> At that meeting, the parties agreed that they would go into the hydraulics business together. Johnson represented to [Rush] that a company was to be formed with [Rush] owning 25% of the business, and Johnson and various family members owning the remaining 75%. Also at that meeting the subject of working capital for the company was addressed. [Rush] mentioned that he had a 401(k) plan about $15,000.00 in cash. Relying on Johnson's representations that he would receive 25% equity in the hydraulics company, [Rush] offered to pay the $15,000.00 to purchase his equity and provide working capital to the company. [Rush]'s offer was accepted, and he delivered a $15,000.00 cashier's check to the company. The company used the funds provided by [Rush] to pay payroll and to

9

meet other expenses in the startup stage of its business. Those funds have never been returned to [Rush], nor has any interest, dividends, or other form of compensation been paid for the use of those funds since they were provided to the company.

Rush's original petition made this request for declaratory judgment:

A justiciable controversy exists between the parties as to the ownership of Enterprises. Plaintiff is thus entitled to a declaratory judgment as to his rights under the Texas Uniform Declaratory Judgments Act. On final hearing hereof Plaintiff seeks to have the Court determine the ownership interests in Enterprises, to issue a declaratory judgment granting Plaintiff ownership in Enterprises according to the Court's determination, and to issue an order requiring Johnson and Enterprises to issue a stock certificate to Plaintiff consistent with the Court's determination.

b.      Rush's amended petition

In his amended petition, Rush dropped all of the causes of action from his original petition (alleging breach of contract, fraud in a stock transaction, and promissory estoppel) and revised his request for declaratory judgment. Rush's amended petition alleged that in early 1999, he attended a meeting at Craig Johnson's parents' home, where his wife, Craig Johnson, Pete Johnson, Caroline Johnson, and Trey Johnson were also present. Rush alleged that he was offered a 20% stake in the new business in exchange for his $15,000 contribution and agreements to run the shop, be lead mechanic, and teach Johnson how to repair hydraulic components. But because Rush decided that he did not want his name on anything, any liability, or to be responsible in any way if the new venture failed,

[Rush] and Johnson agreed that [Rush], in return for his $15,000.00 investment, would receive 20% of the net profit realized from the sale of the business, if and when it sold. [Rush] delivered a $15,000.00 cashier's check, and they began operation of the business. The business used [Rush']s funds to pay payroll and to meet other expenses during the startup stage. Those funds have never been

returned to [Rush], nor has any interest, dividends, or other form of compensation been paid for the use of those funds since they were provided to the company. [Rush] specifically denies that the business paid $18,000.00 to the Attorney General's office on his behalf, and further specifically denies acknowledging that whatever amount the business may have assisted him with concerning any personal child support obligations was related to his $15,000.00 contribution or extinguished the agreement for [Rush] to be paid 20% of the net profit realized from the sale of the business, if and when it sold.[3]

The amended petition made this revised request for declaratory judgment:

A justiciable controversy exists between the parties as to [Rush']s right to 20% of the net profit realized from the sale of Defendants' hydraulic repair business, if and when it sells, an agreement which Defendants have repudiated. [Rush] is thus entitled to a declaratory judgment as to his rights under the Texas Uniform Declaratory Judgments Act. On final hearing hereof [Rush] seeks to have the Court determine his right pursuant to the agreement between [Rush] and Defendants to 20% of the net profit realized from the sale of Defendants' hydraulic repair business, if and when it sells, and to issue a declaratory judgment confirming the parties' agreement.

In both petitions, the liability alleged to support the declaratory judgment is based on the same conversations in 1999 and the $15,000 contribution that Rush made to CJH in 1999. Rush's amended petition sought only a different remedy—i.e., a declaration that he will be entitled to receipt of 20% of the net profit from a future sale instead of a 25% ownership interest—tacked onto the same set of liability facts alleged from his original petition—i.e., the lack of return for the $15,000 contribution Rush made to CJH in 1999. Thus, although Rush

---

[3] Appellees contend that Rush did not inquire about any interest in the business because CJH paid Rush's $18,000 child-support arrearage to the Texas Attorney General's Office and Rush considered that sufficient repayment of his $15,000 contribution to CJH. Appellees provided affidavits from Johnson and Phil Henson, Enterprise's operations manager, about a conversation between Johnson and Rush in November 2010 that Henson witnessed. During that conversation, according to the affiants, Rush acknowledged that CJH paid his child-support arrearage of $18,000, that such amount exceeded the $15,000 he contributed to CJH, and that payment of the arrearage "repaid him in full" and "squared things between Steve [Rush] and CJH." Rush denies this acknowledgement.

requested a different remedy in his amended petition, it "essentially reiterated" his previously pleaded request for declaratory judgment and theory of liability.

Further, the limitations ground asserted in Appellees' amended motion for summary judgment conclusively negates a common element of Rush's newly and previously pleaded request for declaratory relief. Appellees' summary-judgment evidence showed that Pete and Caroline sold their interest in CJH to Johnson in 2008, that CJH ceased to exist in 2008, that Rush knew CJH's existence terminated in 2008, and that Rush filed suit in 2018 to enforce a promise made to him in 1999, long after the applicable statutes of limitations had run on his causes of action. On this record, a justiciable controversy did not exist between Rush and Appellees and declaratory relief was not warranted. *See Bonham State Bank*, 907 S.W.2d at 467; *Rodarte*, 299 S.W.3d at 408-09; *see also Beadles v. Lago Vista Prop. Owners Ass'n*, No. 03-02-00228-CV, 2002 Tex. App. LEXIS 7940, at *6 (Tex. App.—Austin Nov. 7, 2002, pet. denied) (mem. op., not designated for publication) (noting that if statute of limitations has run, trial court has no power to render declaratory judgment and summary judgment is appropriate).

Finally, Appellees' amended motion for summary judgment contended that there was no basis for a declaratory judgment under the Declaratory Judgments Act because "no justiciable controversy between the parties exists as to the ownership of Enterprises." That contention was broad enough to encompass Rush's requests for declaratory relief as pleaded in both his original and amended petitions.

Because the record shows that Rush's amended petition essentially reiterated his previously pleaded request for declaratory judgment, that Appellees' summary-judgment motion conclusively negated a common element of Rush's previously pleaded and amended request for declaratory relief, and that Appellees' amended summary-judgment motion was broad enough to

12

encompass the request for declaratory relief as set forth in Rush's live pleading, we conclude that the district court properly granted summary judgment. *See Hansen*, 525 S.W.3d at 680; *Silver Gryphon, LLC*, 529 S.W.3d at 598; *Coterill-Jenkins*, 383 S.W.3d 581 at 592; *Rust*, 341 S.W.3d at 552. We overrule Rush's appellate issue.

## CONCLUSION

We affirm the district court's order granting Appellees' amended motion for summary judgment.

_____

Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Triana and Smith

Affirmed

Filed:   August 27, 2019

13